HOFFMAN v. THE STANDARD LIFE AND ACCIDENT CO.

(December 19, 1900.)

1. *Insurance—Accident—Increased   Hazard—Policy—Oc-*
   *cupations.*

   Where a railroad flagman, insured in an accident company as "freight flagman, not coupling or switching," was killed while placing a slack pin between two cars, this single act of the insured did not vitiate the policy or change his occupation to one more hazardous, the classification of the company being solely of occupations.

2. *Insurance—Contract—Policy—Evidence—Verbal Agree-*
   *ment.*

   Evidence of a parol agreement is incompetent to alter the terms of an accident insurance policy.

   FAIRCLOTH, C. J., dissenting.

127——22

CIVIL ACTION by M. P. Hoffman and J. L. Hoffman against the Standard Life and Accident Insurance Company, heard by Judge *H. R. Starbuck* and a jury, at a Special (August) Term, 1900, of GASTON Superior Court. From a judgment for plaintiff for $249.25, the plaintiff appealed.

*Jones & Tillett,* and *A. G. Mangum,* for the plaintiffs.
*Geo. F. Bason,* for the defendant.

MONTGOMERY, J.   The defendant, in January, 1899, was engaged in the business of insuring railroad employes against accidents in their respective occupations, the risks and rates being classified according to the several occupations of the employes.   The plaintiff, M. P. Hoffman, is the beneficiary in a policy or contract of that nature, issued by the defendant to C. J. Craig, who was killed in the service of a railway company on the 31st of January, 1899, and this action was brought to recover the amount alleged to be due under the contract.   Craig, in his application for the insurance, represented to the defendant that his occupation was "freight flagman, not coupling or switching," and the policy was issued to him as "freight flagman, not coupling or switching by occupation."   He was insured "against bodily injuries sustained through external, violent, and accidental means," and in case of death from such injuries the amount which he would be entitled to receive from the defendant was $1,000. At the time of the death of the insured he was engaged in the same occupation as he was when he was insured, the premiums had all been paid, and proper notices and proofs of death had been given.   There is an agreement constituting a condition in the policy, however, which is in these words:   "If the insured is injured, fatally or otherwise, by any occupation or exposure classed by this company as more hazardous than that stated above, the company's liability

shall be for such principal sum or weekly indemnity as the premium paid by him will purchase at the rate fixed for such increased hazard." The plaintiff was killed while in the act of "putting in a slack pin," which act is the placing an extra pin behind the one already in use to couple cars to take up the slack. In the original answer the defendant set up two defenses—the first that the insured fraudulently misled the defendant in the procuring of the policy, in that he represented himself in his application to be "a freight flagman, not coupling or switching," when he knew that the representation was false; that at the time of the representation he was in the employment of the Southern Railway Company as a freight flagman, and was constantly required to couple cars and to switch; and that the defendant, not knowing the truth of the matter, and trusting to the representations of Craig, was induced to issue the policy to him, which it would not have done had it known that his duties were those of a brakeman or switchman. The second defense was, that, as the assured was killed while in the act of coupling cars, the loss was to be adjusted under the condition already mentioned and quoted, the amount to which he was entitled being not $1,000, but $270. The defendant afterwards filed an amended answer, by which the first defense set out in the original answer was abandoned and stricken out, and a new and an additional defense was pleaded. The new defense was, in substance, this: That at the time the policy was issued, it was agreed verbally between the agent (Dunbar) of the defendant, and the insured, that, if the insured should be killed while performing the duties of flagman, the beneficiary should receive the $1,000, or, if injured, he would be entitled to $7.50 per week for the injury; but that, if he was killed or injured while in the act of coupling or switching, his beneficiary would get $270

for death, or he would get $6 a week if only injured. The
language of the new cause of action is as follows: "That
at the time said application was made and said policy issued,
the said Craig, the assured, had before him the classification
of risks of defendant company, and was fully advised by
A. S. Dunbar, the agent of defendant, who received said ap-
plication and issued said policy, that he could take his choice
of insuring as 'flagman of freight train, not coupling or
switching,' in which case he would have to pay $27 premium,
and then, if he should be killed or injured while engaged in
the discharge of the duties of such flagman other than coup-
ling or switching, his indemnity would be $1,000 for death,
or $7.50 per week for injury; or he could insure as a freight
brakeman simply, in which latter case he would have to pay
$30 premium, which would secure him an indemnity of
$300 in case of death, or $6 per week in case of injury. It
was further fully explained to said Craig, that if he insured
as 'freight brakeman' he could in no event get a greater in-
demnity than the $300 for death, or $6 per week in case of
injury, whereas if he insured as he did, to-wit, 'as flagman
of freight train, not coupling or switching,' he would, if
killed or injured while discharging the duties of coupler or
switchman, still get so much of the $300 for death, or $6 per
week for injury, as the premiums he paid, to-wit, $27, would
pay for—that is, he would, in any event, get 27-30 of $300
for death, or the $6 per week for injury; and that, fully
understanding the whole matter, the said Craig decided to
insure as he did." The contention on the part of the de-
fendant in respect to the second defense in the original
answer (the first defense having been abandoned, as we have
seen) is this: That Craig having been insured as a flag-
man, not coupling or switching, and having been killed while
engaged in putting in a slack pin—which the defendant con-

tends is in law coupling—can not recover the full amount mentioned in the policy, for the reason that under the condition in the policy he was reduced, when he was engaged in putting in a slack pin, to the class of freight brakemen, a more hazardous class than one in which he was insured; and that the plaintiff, under the condition in the policy, can only recover $270, the amount which a freight brakeman could recover upon the payment of a premium equal to that paid by the insured. That contention of the defendant may be further simplified thus: That the words of the policy, "not coupling or switching by occupation," so far as the recovery of the full amount named in the policy is concerned, mean not coupling or switching at all, under any circumstances. The plaintiff's insistence, on the other hand, is that the language used by the defendant in the policy, "not coupling or switching by occupation," does not mean that the insured should not couple or switch occasionally or exceptionally under stress of circumstances, but that he should not habitually, or as an occupation, couple or switch; that the classification of risks made by the defendant is based on occupations, and not acts. Looking at the matter, then, without yet considering the effect of the alleged parol agreement between the defendant and the insured, we are of the opinion that the defendant's contention is not the law in the case. We think that the language of the policy referred to has reference to occupations, to employments, and not to isolated or individual acts. It may be that some ambiguity is produced by the word "exposure," which is used in the condition just after the word "occupation," but, looking at the entire policy, and considering its aim and object, it must be that the word is used in the sense of the risks arising from a business, occupation, or employment. *Stone's Adm'r v. Casualty Co.*, 34 N. J. Law, 371; *Fox v. Association,* 96 Wis., 390.

In the last-named case, Fox was insured as "supervisor of lumber mill, not working." He was killed while cutting a tree in the woods, where he was aiding in getting logs for the sawmill. The company had classifications of risks; one class known as "lumber men in the woods," and another "supervisor of a lumber mill, not working." The death indemnity was twice as great in favor of the last named class over the first named. The language of the condition was precisely the same as the language in the condition of the policy we are now considering, and the Court said: "By the scheme of insurance under which the contract in question was made, acts and exposures were not classified; occupations were. The term 'exposure' does not appear on that account to have any particular legal significance, if any. The classification was solely of occupations. The question here presented has been repeatedly before the courts, and it has been uniformly held that a particular exposure under such a condition of insurance, though not in pursuit of, and as a part of, the business or occupation mentioned in the certificate, is not material to affect the liability · of the assurer." That part of the case is, however, from our view, of little consequence, for the reason that the jury found from the evidence that the occupation of the insured was that of both flagman and coupler. But the plaintiff insists that the defendant company through its agent, Dunbar, who issued the policy, knew that the insured, though his chief business was that of a flagman, was also engaged in the business—the occupation—of coupling cars when he was not flagging, at the time the policy was issued; that by the evidence of Dunbar himself it appeared that the insured made a true and full statement of his occupation when the policy was issued—that is, that he was a flagman, without qualification —and that the plaintiff was classified by the defendant, and

that, if the classification was an erroneous one, the defendant was bound by it. There was such evidence, and his Honor should have submitted that phase of the case to the jury, with an instruction to that effect, as requested by the plaintiff. Nibl. Ben. Soc. and Acc. Ins., sec. 414; *Carpenter v. Accident Co.,* 46 S. C., 541. It seems from the statement of the case on appeal that the defendant's real contention was over the defense set up in the amended answer— the alleged parol agreement between the agent, Dunbar, and the insured. It was stated in the case on appeal, that the defendant admitted that Craig, the insured, was engaged in the same occupation when killed, as he was when insured. His Honor permitted the agent, Dunbar, to give evidence of the alleged parol agreement, and instructed the jury as follows: "If the jury believe the evidence of Dunbar as to what took place between him and Craig at the time of making the application, and that the schedules were classified, the premiums charged, and the amounts to be paid in case of death, as appears in the book, Exhibit "C," and also believe the evidence relating to the duties of flagman, brakeman, and switchman, this evidence, taken in connection with the policy and application, shows that the only reasonable construction of the contract between defendant company and Craig, in so far as it relates to the case, was that, in consideration of the premium of $27, defendant was to pay beneficiary named in policy $1,000 in case of death caused by external, violent, and accidental means while engaged in the occupation of flagman other than performing duties of coupling and switching; and in case of death so caused while engaged in coupling and switching defendant was to pay 27-30 of $300. And if the jury should further find that the deceased was killed by violent, external, and accidental means while attempting to take up the slack between cars,

and which would have the effect of strengthening the coupling, the issue should be answered, '$270, less premium admitted to be due, unpaid.' " We think that the instruction was erroneous. The verbal agreement entirely altered the contract as it appeared in the policy of insurance, and evidence of it ought not to have been received.

New trial.

Faircloth, C. J., dissents.