[No. 18316. Department Two. May 28, 1924.]

GRACE GOODELL, *Appellant*, v. NORTHWESTERN MUTUAL ACCIDENT ASSOCIATION, *Respondent.*[1]

INSURANCE (127)—ACCIDENT INSURANCE—POLICY—CHANGE OF OCCUPATION—ENGAGED IN "RECREATION." There was a change of occupation, within the clause of a school teacher's accident policy, reducing the recovery in case of death while engaged in an occupation classed as more hazardous, where, during vacation, he was employed as a "temporary forest guard" the duties and dangers of which were the same as of a "forest ranger," classed in the policy as more hazardous; and it cannot be said that he was within the exception "engaged in recreation," where he was required to put in full time and received full pay.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered March 19, 1923, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on an accident policy. Affirmed.

*R. W. Greene,* for appellant.

*W. M. Whitney* (*Sather & Livesey,* of counsel), for respondent.

[1]Reported in 226 Pac. 266.

MITCHELL, J.—This is an action to recover the principal sum of $5,000 on a combination accident and health insurance policy issued by the Northwestern Mutual Accident Association, a corporation. It was issued to Roy H. Goodell, on December 9, 1921. The plaintiff, Grace Goodell, was named as beneficiary in case of the death of the insured. He was accidentally killed on July 6, 1922. At the trial, upon the motion of the defendant, a verdict was directed in the sum of $1,333.34, with interest, in favor of the plaintiff. She insisted on judgment for the principal sum of $5,000, notwithstanding the verdict, and in the alternative for a new trial. Both of her motions were denied, and she has appealed from a judgment on the verdict.

For some years prior to the date of the policy, the insured had been regularly engaged nine months each year in the profession or occupation of teaching school, other than one year in service during the world war and one year thereafter. In the application, which was made a part of the policy, his business was stated to be that of "principal of schools" at Entiat, Washington, and the policy mentions his occupation as that of "principal of schools." At and prior to the date of the policy, there was on file with the state insurance commissioner respondent's manual of classification of hazards, of persons engaged in various occupations, with premium rates. In the manual, as well as the policy and the application for it, the occupation of principal of schools is classified as "preferred" or "select." The policy is in the standard form, and as required by ch. 31, Laws of 1921, p. 103 (§ 7235, Rem. Comp. Stat.) [P. C. § 3131], contains the following provision:

"STANDARD PROVISIONS

"Change of Occupation. 1. This policy includes the endorsements and attached papers, if any, and con-

tains the entire contract of insurance except as it may be modified by the Association's classification or risks and premium rates in the event that the Insured is injured, after having changed his occupation to one classified by the Association as more hazardous than that stated in the policy, *or while he is doing any act or thing pertaining to any occupation so classified,* except ordinary duties about his residence, or while engaged in recreation, in which event the Association will pay only such portion of the indemnity provided in the policy as the premium paid would have purchased at the rate, but within the limits so fixed by the Association for such more hazardous occupation.''

In April, 1922, prior to the close of his school at Entiat, the insured entered into a contract with the school district to serve as principal of the school for the following term of nine school months, commencing September 6, 1922. During vacation, and without any notice to or knowledge on the part of the insurance company, he obtained employment, commencing early in June, 1922, at what was styled "temporary forest guard" in Whatcom county, by the United States government in the Washington National Forest. A permanent position as forest guard is under the civil service, and those employed as forest guards not under civil service, such as the insured in this case was, are so employed for less than three months and are designated temporary forest guards. It was while the insured was thus employed that a fire broke out in the national forest on June 29 and continued until July 6, during all of which time the insured, first in charge of the situation and then under the immediate directions of a forest supervisor or his deputy, engaged in fighting the fire until late in the afternoon of July 6, when, under directions of the supervisor to cease work, and upon advancing a short distance away, a rock became

dislodged from the burned area above, rolled down the mountain side, struck and killed the insured.

The manual of risks designates forest ranger as No. 6 hazardous occupation. It does not in terms mention forest guard, whether temporary or permanent, and for this reason it is argued on behalf of the appellant that there is no provision or authority for reducing the amount of recovery below the principal sum of the policy. But the test of liability of the insurer is not so much by what particular name an employer may designate one's service or position as it is the actual character of the services rendered with reference to the occupation mentioned in the manual. Of the facts as to the latter, there is no dispute or contradiction in this case. Forest rangers and guards, so called, are both under the supervisor and his deputy. As a matter of fact, the technical difference between the two is small and need not be here described. The whole of the Washington National Forest was supposed to have four permanent rangers, but in June and July, 1922, this district of the forest had no one occupying the position technically known as forest ranger, and because Mr. Goodell had the experience of two former vacation periods under the same supervisor, he in effect performed those services, and was doing so at the time he was killed. It appears that, at the time the fire started, he had charge of the whole district, neither the supervisor nor his deputy being present. As shown by respondent's abstract, which has been compared with the statement of facts, the supervisor testified:

"On July 6th, 1922, when Roy was killed and for several days prior thereto the dangers of the Forest Guard and the Forest Ranger were the same. This particular fire started on June 29th; whenever the Forest Guard is on the job the dangers of the Forest

Guard and the Forest Ranger are identical; I do know that Roy actually worked two days fighting the fire, but I am not sure how many more days. Whenever a fire starts we immediately rush all our men and equipment, whatever we have, to the scene in order to save the situation, and Forest Guards and Forest Rangers do like and interchangeable work."

The deputy forest supervisor testified:

"Guards are sent any place and every place when Rangers are not available, and the Guards would be compelled to go into any danger. If a fire or danger, or any situation should arise, and no Ranger is available, then we would send in a Forest Guard. If a Ranger had been stationed at Newhalem he would have been compelled to do the same thing that Goodell did, including such clerical duties as were done; whenever a situation came up in the Forest involving loss or damage to Government property if there was nobody of superior authority available, the Guard used his discretion in handling the situation; a Forest Guard, such as Mr. Goodell, would do, in his locality, whatever was necessary to be done to assist in taking care of Government property and such work as was necessary to be done, whether fighting fires, scaling logs, issuing permits, or patroling property, just the same as a Ranger."

It follows, we think, that notwithstanding the name by which his services were designated on the records of the forestry service, he actually performed the services of a forest ranger, such as is referred to in the respondent's manual of risks.

Again, noticing the exception, "while engaged in recreation," mentioned in the statute and the policy, to the rule reducing the amount of recovery where the accident occurs while the insured is engaged in a more hazardous occupation than that in which he is written, it is contended on behalf of the appellant that the insured, after all, did not change his occupation but was

engaged only in recreation. Under his contracts, teaching school was a seasonal calling or occupation, as is usually the case, and, while generally speaking, it manifestly was the occupation or calling of his life, it was in no way inconsistent with the idea or claim of a change of occupation during the three months vacation period from the seasonal engagement, within the terms of the policy built on a classification of risks. The appellant spoke of those employments of the insured, her brother, as recreational, which, of course, was her opinion only, or manner of characterizing them. But the testimony shows that he received $125 a month—$15 more than the regular salary because of his experience and superior ability. The forest supervisor who employed him testified:

"Goodell was employed in this work in 1916, also 1917, and then again in 1922, and in every case for compensation. Goodell was required to put in the usual official day of 8 hours from 8 until 5. It was an employment and he was paid for it; if Goodell fished outside of regular hours the government didn't care, and if he chose to spend his time after official working hours in recreational pursuits the government did not object."

Of this situation it was very correctly stated by the trial court:

"But the idea of recreation, as that term is used in this policy, is inconsistent with the idea of employment for consideration where a man has his constant duties for a given time for a consideration and is subject to orders and is working and doing the identical things of other men in the same class. That is not recreation. I would call that real labor—real employment—an occupation for the time being, and there is nothing inconsistent in saying that a man may have two occupations. In this case they dovetailed and filled the time each year of this young man and enabled him to

be busily employed during the whole of the time in profitable and honorable employment.''

We are satisfied that there was a change of occupation within the meaning of the statute and the policy, and that the employment was not recreational.

Moreover, as already seen from the terms of the policy, it is not indispensable in the proper adjustment of this liability to depend on the clause relating to a change in occupation to a more hazardous one. Of equal importance are the words ''or while he is doing any act or thing pertaining to any occupation so classified.'' It cannot be said that the insured, at the time of his death, was not so engaged. The supervisor and his deputy both testified that he was, and they were the only witnesses who were present at that time.

As to the law applicable, it seems there is a contrariety of opinion in other jurisdictions among the earlier line of cases construing provisions of policies concerning alleged change of employment or where some act is involved pertaining to a more hazardous employment. Since those cases were written, the standard provisions on those subjects, found in this policy and which have been adopted in a large number of states in essentially the same language, have received a construction that appears to be pretty well settled. The case of *Green v. National Casualty Co.,* 87 Wash. 237, 151 Pac. 509, on principle covers the present case. In it this court refused to follow the case of *Holiday v. American Mutual Accident Ass'n,* 103 Iowa 178, 72 N. W. 448, 64 Am. St. 170, which, together with other cases of similar import, are cited and relied on by the appellant in the present case. In the *Green* case this court said:

''The first question to be considered is whether, at the time the insured received the injury from which he

died, he was doing or performing an act pertaining to the occupation of an amateur hunter. It is not claimed that his occupation while he was on a vacation making this hunting trip had changed from that of a clerk to that of an amateur hunter, but it is claimed that, at the time of the injury, he was performing an act pertaining to the more dangerous hazard of a hunter. Under the facts stated, it is plain that the insured, at the time of his death, was hunting, and that he was engaged in hunting as a mere recreation. Something is said in the respondent's brief to the effect that, since he was rowing the boat at the time of the accident, he was not engaged in an act pertaining to hunting. But with this contention we cannot agree. The parties named were on a hunting trip. The fact that one of them happened to be rowing the boat and the other was doing the shooting, while they crossed the river, would not make one a hunter and the other not. They were engaged together in hunting as a mere recreation. It was a joint undertaking or enterprise, so to speak.

"From the excerpt quoted from the application, which became a part of the contract, it appears that if the insured was injured while doing or performing 'temporarily or otherwise any act pertaining to any more dangerous hazard or exposure,' the liability under the policy would be only for such an amount of indemnity as the premium paid would purchase at the rate fixed for the more perilous hazard. The case of *Lane v. General Accident Ins. Co.* (Tex. Civ. App.), 113 S. W. 324, presents facts strikingly similar to those in this case. In fact, the facts there are almost identical. In that case the insured, at the time the policy was issued, was engaged in the occupation of a sheep farmer, and while hunting was killed by the accidental discharge of a gun in the hands of another. On the back of the policy was a provision in almost the identical language as that which appears on the back of the policy in the present case. It was there held that, since the insured was killed while hunting for recreation, that the insurer was liable only for the amount of the indemnity provided for the occupation of a hunter. It was there said:

" 'Deceased had not changed his occupation when he was killed and was still engaged in sheep farming, but he was actually engaged in hunting deer when he was shot, and was undoubtedly doing an "act or thing pertaining" to the occupation of hunting, which was classified as an occupation more hazardous than that of sheep farming.'

"Sustaining the principle of that case and closely analogous upon the facts are: *Montgomery v. Continental Casualty Co.,* 131 La. 475, 59 South. 907; *Loesch v. Union Casualty & Surety Co.,* 176 Mo. 654, 75 S. W. 621; *Thomas v. Masons' Fraternal Acc. Ass'n,* 64 App. Div. 22, 71 N. Y. Supp. 692. In the case of *Holiday v. American Mut. Acc. Ass'n,* 103 Iowa 178, 72 N. W. 448, 64 Am. St. 170, a diametrically opposite view is expressed upon the terms of an accident policy in language almost identical with that upon which the present action is based. In that case the insured was killed while hunting for recreation. It seems to us that the holding in the Iowa case practically reads out of the contract that clause which provided that if the insured while doing any act or thing pertaining to any occupation classified as a more dangerous hazard, the liability should only be for such sum as the premium paid would purchase for such a hazard. In the case now before us, we think it plain that the insured, at the time he was injured, was engaged in doing an act which pertained to a more dangerous hazard, that of hunting.''

The *Green* case, *supra,* has been cited and approved in the later cases of *Ebeling v. Bankers Casualty Co.,* 61 Mont. 58, 201 Pac. 284, and *Ogilvie v. Aetna Life Ins. Co.,* 189 Cal. 406, 209 Pac. 26. In the *Ebeling* case, the Montana court said:

"The earlier accident policies provided only for diminished liability in the event the insured, at the time of his injury, had changed his occupation to one classified as more hazardous, and the courts held generally that the term 'changed' was employed in the sense of substitution, that the performance of an iso-

lated act pertaining to a more hazardous occupation did not constitute a change of occupation, and that the insurance company could not claim the right to have the indemnity diminished by reason of the fact that the insured was injured while in the performance of such isolated act. . . . Later the courts held that, if the act being done at the time the injury was received was one which fairly pertained to the regular employment of the insured, it could not be held that he had changed his occupation by reason of the fact that the act pertained, also, to a more hazardous employment. . . . In *Holiday v. American Mutual Acc. Ass'n*, 103 Iowa 178, 72 N. W. 448, 64 Am. St. Rep. 170, and in *Zantow v. Old Line Acc. Ins. Co.*, 104 Neb. 655, 178 N. W. 507, recovery was permitted in each instance for the face of the policy, under circumstances not different materially from those involved in the present inquiry, and those two cases are the only ones disclosed by our research which would warrant recovery in this case for the larger amount. We are unable, however, to appreciate the reasoning in either case, or to approve the method by which the conclusion was reached. In effect, the Iowa court read out of the policy the provision for diminished liability in the event the insured is injured while doing any act or thing pertaining to a more hazardous occupation, or failed to distinguish between a policy containing such provision and one which omits it. . . .

"This policy makes the character of the occupation to which the act pertains, and not the character of the act itself, determine the extent of liability. It does not provide for a diminished liability only in the event the insured is injured while doing an extrahazardous act or thing pertaining to a different occupation, but does provided for diminished liability if, at the time of the injury, the insured is doing any act or thing pertaining to a more hazardous occupation. The adjective 'any' means one indifferently out of an unlimited number (Webster's International Dictionary), and therefore, if the act or thing being done by the insured at the time of the injury pertains to a more hazardous occupation, it is wholly immaterial that such

act itself, if standing alone, would be harmless, or fraught with no danger whatever. By no possible process of reasoning can the language employed be tortured into any other meaning, and, since the parties so expressed themselves, they must abide the consequences. From the time this shipment was started on its journey until it reached its destination, the live stock composing it were in transit, and Ebeling was a caretaker or tender in transit. *Loesch v. Union Casualty & Surety Co.*, 176 Mo. 654, 75 S. W. 621. It may be conceded that the isolated act of tending this particular shipment did not constitute a change of occupation within the meaning of the policy, but if it did not constitute an act or thing pertaining to the occupation of a tender in transit, it is only because the terms employed are utterly incomprehensible.

"But the meaning of the contract is not obscure; on the contrary, it is too plain to admit of doubt. We are not alone in this conclusion. The decided weight of authority sustains our view. In each of the following cases: *Thomas v. Mason's Fraternal Acc. Ass'n*, 64 App. Div. 22, 71 N. Y. Supp. 692, *Lane v. General Acc. Ins. Co.* (Tex. Civ. App.) 113 S. W. 324, and *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509— the insured was injured while hunting, an occupation classified as more hazardous than the one for which he was accepted, and in each instance it was held that, though the insured had not changed his occupation, he was doing an act or thing pertaining to the more hazardous employment, and therefore the recovery should be limited to the amount which the premium would purchase upon the life of one engaged in such more hazardous undertaking. In *Montgomery v. Continental Casualty Co.*, 131 La. 475, 59 South. 907, the insured, a draftsman with office and traveling duties only, was injured while doing the work of a machinist, an occupation classified as more hazardous, and the decision was in harmony with the views expressed in the cases last cited above.

"The order denying a new trial is affirmed. For the reasons given, the cause is remanded to the district

court, with directions to modify the judgment by reducing the amount thereof to $275 as of the date of the original judgment, and, when so modified, it will stand affirmed."

In the *Ogilvie* case, the supreme court of California quotes with approval from the case of *Green v. National Casualty Co., supra,* and upon citing other authorities also, says:

"We are of the opinion that the better reason, as well as the weight of authority, is in support of that rule which gives effect to the plain intent of the language used by the parties in their contract."

In the case of *Stewart v. Massachusetts Accident Co.,* 96 Conn. 561, 114 Atl. 657, that court said:

"The claim of the plaintiff is based upon the theory that, because the deceased never gave up the business of oyster opener, he remained entitled to be considered as such, although he died as the result of an accident received while employed in a more dangerous occupation. The fallacy in the plaintiff's claim lies in not recognizing that a man may have and work at different occupations at different times without permanently relinquishing any one of them. Upon the statement of fact here, unquestioned as we have seen, it was the duty of the court to have instructed the jury that the facts disclose that the deceased was working at an occupation classified as more dangerous without informing the company. Where the amount of insurance and the rates depend upon the kind of work one is engaged in, the rights of the claimant are based upon the actual facts as to what the person was doing, what his occupation was at the time that he was injured, and not upon whether he, when the season came around, intended to resume some other and more favored occupation which from its seasonal character he has been forced to relinquish for a part of the year. The policy does not provide for or recognize temporary changes, but calls for the occupation in fact. And here the plaintiff's evidence shows without question that

the deceased in fact was regularly employed as a laborer at the time of his death, and that his occupation was then that of a laborer, and by the terms of the policy the rights of the claimant became limited to the indemnity payable for the occupation in which he was engaged. There was nothing properly to leave to the jury upon the unquestioned fact and under the terms of the policy."

Other recent cases to the same effect are *Ridgely v. Aetna Ins. Co.*, 160 App. Div. 719, 145 N. Y. Supp. 1075; *Lane v. General Accident Ins. Co.*, 113 S. W. (Tex. Civ. App.) 324; *Continental Casualty Co. v. Hawkins*, 157 Ark. 342, 248 S. W. 553.

Even under these views of the law some question has been raised by the appellant as to the correctness of the amount of the recovery allowed, but, upon an examination of the premium rates and other evidence in the case, we are satisfied the amount directed by the court and carried into the judgment is correct.

The case was properly disposed of, as a matter of law, by the court in directing the verdict. The appellant's motion for a judgment for $5,000 notwithstanding the verdict was properly denied, as also was her motion for a new trial. Appellant's motion to strike respondent's brief we think should be denied.

Judgment affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.