[No. 30558.   Department One.   January 7, 1949.]

PAUL C. BRYAN, *Respondent*, v. THE TRAVELERS INSURANCE COMPANY, *Appellant*.[1]

'Reported in 201 P. (2d) 502.

*Preston, Thorgrimson & Horowitz,* for appellant.

*Peyser, Bailey & Cartano,* for respondent.

STEINERT, J.—Plaintiff brought suit upon an accident policy issued to him by the defendant, an insurance company. In his complaint, plaintiff asked for judgment in the sum of $7,450, being the total indemnity alleged to have accrued, at the rate of fifty dollars a week, during a period of total disability previously sustained by him as the result of an accident. He further asked for a decree directing that such weekly payments be continued in the future for such length of time as he was thus totally disabled. Trial was had before a jury, but, at the conclusion of the evidence, the cause was, by stipulation of the parties, withdrawn from the jury's consideration and decided by the court. Findings of fact were made, from which the court drew its conclusions of law and entered judgment in favor of the plaintiff, in the amount of the accrued weekly indemnity prayed for by him, together with interest thereon. Defendant appealed.

At the time with which we are here particularly concerned, respondent, Paul C. Bryan, was the owner and manager of a small lime plant, known as Goldbar Lime Company, located near the town of Gold Bar, in this state. The operations of this plant consisted of mining or quarrying lime rock from nearby mountains, transporting the rock to the grinding mill where it was crushed and screened, and selling the product to farmers and fertilizer concerns. For these operations, respondent employed a foreman or superintendent, one or two men in the grinding mill, and four or five men in the quarry.

Respondent's duties in connection with the business and its operations were, principally, office duties, such as arranging for finances, paying the bills, keeping books and other records, selling the finished product, and supervising

delivery thereof. In connection with these principal duties, however, respondent also managed the general operations of the plant, which involved the duty of employing and keeping men at work. The facts peculiar to respondent's situation, *viz.*, that his plant was a small operation, and that it was located outside a relatively isolated mountain town, in addition to the fact that there was a general labor shortage during and following the period of the second world war, made it necessary, on rare occasions, that he should take the place of an employee who at the time happened to be absent from the plant, or else be forced to shut down the operations until the employee returned or could be replaced.

For a continuous period of about twenty-two years, prior to his purchase of the lime plant in 1943, respondent had been successively employed as owner or manager of several dairy companies, and as salesman and financial agent of a logging concern. Throughout that period, and while so employed, respondent had been insured in those respective vocational capacities by the appellant, Travelers Insurance Company. In consequence of those experiences, respondent had established himself as a good insurance risk, and this fact was taken into consideration when the policy here involved was written and issued by appellant.

On January 12, 1944, which was several months after respondent had acquired ownership of the lime plant, appellant, on application of respondent, issued to him its "Executive Special Accident Policy," insuring him against loss from bodily injuries through accidental means. The policy was in the principal sum of $10,000 and provided for a weekly indemnity of fifty dollars. The annual premium thereon amounted to $65.50.

The policy carried a standard provision, as required by Rem. Rev. Stat., § 7235, reading as follows:

"This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance *except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one*

*classified by the Company as more hazardous than that
stated in the Policy, or while he is doing any act or thing
pertaining to any occupation so classified,* except ordinary
duties about his residence or while engaged in recreation in
which event the Company will pay only such portion of
the indemnities provided in the Policy as the premium paid
would have purchased at the rate, but within the limits so
fixed by the Company, for such more hazardous occupa-
tion." (Italics ours.)

Attached to the policy and made a part thereof was a
copy of respondent's application for insurance. The appli-
cation was in the form of a questionnaire containing, among
others, the following interrogatory: "State fully your oc-
cupation—position, nature of business engaged in and the
duties performed?," followed by an answer in these words:
"Manager, mining and manufacturing lime, not superin-
tending, duties office and selling, not delivering."

It is undisputed that appellant's accident insurance man-
ual, classifying various occupations and risks, contained no
specific classification which would fit respondent's stated
occupation of manager of a lime plant, nor did the manual
contain any definition of the term "manager" or list any
duties as pertaining to such employment. The nearest
classification relating to such occupation, exposure, or haz-
ard, appearing in the manual, was as follows:

| "Cement or Lime Works: | Class |
|---|---|
| "Dryerman | F |
| Foreman | E |
| Limestone Burner or Quarryman | G |
| Packer | F |
| Proprietor or Superintendent, superintending only | D° |
| Sack Maker or Repairer | D |
| Worker or Laborer (not otherwise classified) | G" |

Respondent testified that, at the time of making applica-
tion for this insurance, he personally consulted Mr. K. C.
Peirce, who had charge of underwriting in appellant's Se-
attle office, and that he then and there made full disclosure
and gave a full description of his duties as outlined above,
including that of doing the work of an absent employee, on
rare occasions, in order to keep the plant operation going.
Mr. Peirce, who was called as a witness in the case, admitted

that he had been consulted in the matter by respondent, and that as a result of that conference he himself had made the classification as it appears in the policy, to fit the particular case. He did not deny that respondent had fully disclosed his duties as set forth above.

The trial court found that respondent, at the time of applying for the insurance policy here in question, made a full disclosure of his occupation, his duties, the size of his plant, the nature and hazards of the operation, the number of employees, and the necessity on his part of doing the work of an employee, at times, in the event of the illness or temporary absence of such individual, or because of some emergency. There is no contention here that appellant's agent, Peirce, was misled or deceived by anything that respondent said or did during the conference between these two men.

Following that interview, Peirce made and recommended the classification as it appears in the policy, being a "B" classification, subject to approval by the home office. In due time, the home office approved the classification, assigning it to fit the particular case, and the policy was thereupon issued, reciting upon its face that it insured respondent "under classification 'B' by occupation a MANAGER, MINING AND MANUFACTURING LIME, NOT SUPERINTENDING, DUTIES OFFICE AND SELLING, NOT DELIVERING." Respondent took no part in formulating the risk classification into which he was placed, nor did he prepare the written description of his duties as they appeared on the face of the policy.

It should be here explained that, under the statement of premium rates and classification of risks filed by the appellant with the state insurance commissioner, a "B" classification, carrying a weekly indemnity of fifty dollars in this kind of policy, called for an annual premium of $65.50, which was the amount paid by respondent, whereas the same coverage for a *laborer* in a lime works, under a "G" classification, would require an annual premium of $173.75; further, that an annual premium of $65.50 would purchase for such a laborer, under a "G" classification, a weekly in-

demnity of only $18.85, instead of $50 as provided in the policy for the "B" classification.

On February 17, 1945, one of the two men who were regularly employed in the grinding mill of respondent's plant did not report for work, on account of the sudden illness of his wife. It therefore became necessary for respondent to take the place of the absent employee, for otherwise it would have been necessary to close down the plant for the day. On the second day of the employee's absence, respondent was doing the laborer's work at the foot of a chute through which the quarried rocks were conveyed from the side of the mountain into a crusher inside the mill. While he was engaged in feeding the quarried material into the crusher, a large rock broke loose near the top of the chute and, in its descent, struck respondent a glancing blow upon the chest. There is no dispute as to the fact that the injury thus sustained by respondent resulted in his total disability from February 17, 1945, to December 16, 1947.

Respondent brought this action to recover indemnity, at the rate of $50 a week, as provided in the policy. Appellant set up several defenses, asking that the action be dismissed, or, in the alternative, that its liability under the contract of insurance be limited to $18.85 a week.

The only question presented upon the appeal is whether, under the facts of this case as hereinbefore stated, respondent is entitled to recover the full amount of indemnity provided in the policy, on the basis of a "B" classification, or whether, on the contrary, he is entitled to recover only that amount of indemnity which would be recoverable by a laborer in a lime works, under classification "G" appearing in appellant's manual.

Appellant's contentions are (1) that, on this particular occasion, respondent was substituting for one of his laborers in hazardous work, and that, therefore, his duties for the time being did not pertain to the occupation of a "manager, mining and manufacturing lime, not superintending, duties office and selling, not delivering," as described in the policy; and (2) that, since respondent was totally disabled while

performing such hazardous labor, he may recover only that amount of weekly indemnity which the premium paid by him would have purchased at the rate applicable to that character of employment.

These contentions may be considered together, for they are both predicated upon the argument that respondent's duties, so far as this insurance policy is concerned, were simply "office and selling." This argument fails to take into consideration any question of what acts or duties performed by an insured may be regarded as incidental to the particular occupation of *"manager,* mining and manufacturing lime," even though such acts or duties may at the same time also pertain to a more hazardous occupation than the one in which the insured is usually or generally employed.

In support of its contentions, appellant relies principally upon the case of *Bothell v. National Cas. Co.,* 59 Wash. 209, 109 Pac. 590, which appellant asserts is squarely in point on the matter of limiting respondent's recovery herein to $18.85 a week.

In the *Bothell* case, *supra,* the facts as stated in the opinion were as follows: On October 15, 1908, one A. J. Bothell made written application to National Casualty Company for a policy of accident insurance. The application stated that Bothell was the owner of a logging camp, and that his duties were "contracting only; not working." Immediately underneath Bothell's signature on the application appeared the following printed provisions:

" 'I understand and agree that, if I contract illness or am injured fatally or otherwise after having changed my occupation to one classified by this company in their manual as more hazardous than that herein stated, or if I am injured while performing, *temporarily or otherwise,* any act pertaining to any more dangerous hazard or exposure, or occupation, the company's liability shall be only for such proportion of the principal sum or other indemnity as the premium paid by me will purchase, at the rate fixed by the company for such greater or more perilous hazard or exposure,' " and

" 'I further agree to accept the policy subject to its provisions, conditions, limitations and the company's manual of classifications of hazards.' " (Italics ours.)

The company accepted the application and, on October 17, 1908, issued its policy of insurance, with a copy of the application attached thereto and expressly made a part thereof, and forwarded the policy to the insured. On November 17, 1908, the insured, while working as a *logger*, received injuries from which he subsequently died.

The beneficiary, Arabell Bothell, brought suit to recover the sum of one thousand dollars, which was the amount of the death indemnity provided in the policy. The insurance company contended that the beneficiary was entitled to recover only the sum of one hundred dollars, which was the amount of indemnity provided in the company's manual, or classification of hazards, for the death of an insured whose occupation was that of logger. The trial court granted and entered judgment for the plaintiff in the larger amount, and, on appeal, this court reversed the decision and directed that judgment for the smaller amount be entered.

The theory upon which the *Bothell* case was presented to this court by the plaintiff beneficiary therein *was not* that the activity in which the insured was engaged at the time of his injury pertained, or was incidental, to his classified occupation of "contracting only; not working." On the contrary, the opinion in that case indicates that it was conceded by the beneficiary that, under the specific wording of the policy, the manner by which Bothell came to his death would call for a reduction of indemnity; the opinion further indicates that the *sole question* there presented for decision was whether or not, despite the manner of the insured's death, the insurance company was nevertheless liable for the full indemnity, on the ground and for the reason that the insured had made a full disclosure of his duties in and about his logging camp, and the agent of the insurance company had fraudulently misclassified the insured, presumably in order to sell the policy. Since that was the only point argued in the *Bothell* case, it cannot be said that the opinion therein is authority for holding that the activity in which the respondent here was engaged when injured did not pertain, or was not incidental, to his

occupation, as classified by the appellant insurance company.

In the instant case, there are *two issues* interwoven into the main question of whether or not the respondent is entitled to recover full indemnity. Those issues are: (1) Did the activity in which the respondent was engaged at the time of his injury *pertain* to his main occupation as classified? and (2) if not, is the insurance company nevertheless bound by its classification of the insured, made with full knowledge of the scope of his activities as manager of his own concern?

It is to be noted that the *Bothell* case, as before stated, is not an authority on which a decision with reference to the first of these questions can be based, and that, therefore, if the first question is decided adversely to the appellant, the second question becomes moot, as it merely poses the query of whether or not the appellant insurance company would be estopped to deny full liability, *even though* the policy be interpreted as providing for a reduced indemnity under the facts of the case.

However, while the *Bothell* case does not constitute authority on the first and main issue of the instant case, as above set forth, we shall nevertheless compare the facts of the two cases in that light, because counsel have presented argument herein on that basis. It is true the *Bothell* case bears a general similarity to the case at bar, but there are many dissimilarities between the two cases. We will here note these differences, most of which are pointed out in respondent's brief, and, in doing so, we will make reference to the record in the *Bothell* case, as both parties herein have done in their briefs, and as we are thus invited to do: (1) In the *Bothell* case, the company's industrial manual contained, in its classification of hazards, the occupation of "contractor," under which the insured, Bothell, was classified in the policy; in the instant case, the company's manual contained no such classification as "manager, mining and manufacturing lime," but on the contrary, that designation was devised by appellant's own agent to fit the particular case, upon information furnished to the agent; (2) in the

*Bothell* case, the application for the policy stated that the applicant's occupation was that of "owner of logging camp" and that the duties of such occupation were "contracting only—not working," thus not only specifically limiting the character of the employment to "contracting," but also expressly excluding from such employment any activity characterized as "working," such as performing the duties required of a logger, an engineer, a teamster, or a laborer, each of whom had a separate and distinct classification in the company's manual; whereas, in the instant case, there was no language limiting or excluding any duties which the insured might perform except those of "superintending" and "delivering," neither of which is involved here; (3) in the *Bothell* case, the policy distinctly provided that if the insured should be injured while performing, *temporarily or otherwise,* any act pertaining to any more dangerous hazard or exposure, the company's liability should be measured and decreased accordingly; in the instant case, the comparable clause provides that the indemnity will be reduced if the insured is injured doing work pertaining to an occupation classified as more hazardous, *without* the additional specification that such a reduction would take place even though the more hazardous work is performed only *temporarily*; (4) in the *Bothell* case, the insured was, as shown by the record therein, not merely *temporarily* engaged in performing work of a more hazardous nature than that for which he was insured, but, as a matter of fact, was *constantly* engaged in such work, and seldom did he do work pertaining to the occupation under which he was classified in the policy, while, in the instant case, the insured performed the more hazardous work only on rare occasions, and then only to keep the operation running, as he, the manager, was required to do; in other words, in the *Bothell* case, it was wholly incorrect to describe the insured's occupation as "not working"; on the other hand, in the instant case it would have been correspondingly incorrect to describe the insured's occupation as that of laborer; (5) the *Bothell* case was tried *only* upon the theory that the company's agent had committed fraud by wrongfully

and intentionally misdescribing Bothell's occupation and duties, in language that Bothell himself could hardly have failed to note and understand; in the instant case, there is no question whatever of fraud on the part of either the agent or the insured, but, so far as the present issue is concerned, only a question of whether, at the time of his injury, the insured was doing an act incidental or pertaining to the occupation of manager of a lime plant.

In this connection, two other cases from this jurisdiction should be noticed, although appellant does not rely upon them. We mention them only because of a general similarity which they bear to the case at bar, and because they are cited and distinguished by respondent. They are *Green v. National Cas. Co.,* 87 Wash. 237, 151 Pac. 509, and *Goodell v. Northwestern Mut. Acc. Ass'n,* 130 Wash. 55, 226 Pac. 266.

In the *Green* case, *supra,* the occupation of the insured at the time of the issuance of the policy was that of a "clerk in drug store handling light goods at counter." The application for the policy contained the same provisions as those in the *Bothell* case, quoted above, reciting that, if the insured should be injured while doing or performing, *temporarily or otherwise,* any act pertaining to any more dangerous hazard, exposure, or occupation than the one provided for in the policy of insurance, the liability of the company should be only an inverse proportionate part of the principal sum or indemnity set forth in the policy. The application further provided that the insured accepted the policy subject to the company's manual of classification of hazards. In the company's manual appeared the classification of hunter, either professional or amateur, reference being made to table "X" therein, which fixed the premium and indemnity for one engaged in that occupation or activity. The insured, while on a hunting trip, sustained an injury from an accidental discharge of a gun and, in consequence thereof, died. In modifying a judgment for the full amount of the policy, granted by the trial court, this court on appeal said:

"From the excerpt quoted from the application, which became a part of the contract, it appears that if the insured

was injured while doing or performing 'temporarily or otherwise any act pertaining to any more dangerous hazard or exposure,' the liability under the policy would be only for such an amount of indemnity as the premium paid would purchase at the rate fixed for the more perilous hazard."

Upon the basis of that statement, this court concluded by saying:

"In the case now before us, we think it plain that the insured, at the time he was injured, was engaged in doing an act which pertained to a more dangerous hazard, that of hunting."

Clearly the cited case has no application here, for in that case there was not only a temporary performance of a more hazardous act or occupation, as defined in the company's manual, but also an engagement upon an activity wholly outside the occupation for which the person was insured. In the case at bar, the insured was engaged in an activity which, under the evidence, was a part of the occupation for which the policy of insurance was issued; furthermore, the policy did not provide that *temporarily* doing an act of a more hazardous nature would result in a reduction of indemnity.

The *Goodell* case, *supra,* is one where the insured's occupation, as stated in the application for the policy, was that of a principal of schools. He sustained a fatal injury while employed during a vacation period, as a forest guard, or forest ranger, which was listed in the company's manual as a more hazardous occupation than that of principal of schools. A judgment in the trial court for a reduced amount of death indemnity was affirmed by this court, on the ground that there had been a change of occupation, within the meaning of the reduction of indemnity provision required to be included in the policy by virtue of Rem. Rev. Stat., § 7235. It is readily apparent that the ruling in that case is not applicable here, for the reason that in the *Goodell* case there was a distinct change of occupation to one in no way pertaining to the classified occupation of school teacher.

Appellant also cites and relies upon the following cases: *Ebeling v. Bankers' Cas. Co.*, 61 Mont. 58, 201 Pac. 284, 22 A. L. R. 777; *Tobin v. National Cas. Co.*, 63 Cal. App. 578, 219 Pac. 482; *Cuneo v. U. S. Cas. Co.*, 125 S. W. (2d) (Mo. App.) 908; *Metropolitan Cas. Ins. Co. v. Stahl*, 72 F. (2d) 881. We shall not endeavor to analyze these cases in detail. Each of them was one where there either was a complete change of occupation on the part of the insured, or else the policy expressly confined the occupation to certain named duties, by the use of the word "only." As stated above in our discussion of the *Bothell* case, neither of those two factors is involved in the case at bar.

Having considered appellant's contentions and having examined the cases cited by it as authority therefor, we turn our attention to the argument put forth by the respondent. His contentions are: (1) that since respondent was doing work *pertaining* to the occupation under which he was classified, he may recover the full amount of indemnity provided in the accident insurance policy, even though that work, then being performed by him, *also pertained* to another occupation classified by the appellant insurance company as more hazardous; and (2) that since respondent gave the appellant full information as to his occupation and duties, and appellant, on the basis of that information, made a special classification of risk and description of occupation to fit the particular case of the respondent, appellant cannot now repudiate the classification which it knowingly and deliberately made.

In support of his first proposition, respondent cites and quotes from numerous decisions. While we cannot in this opinion give the space necessary to a full discussion of all of these cases, we deem it advisable, as well as profitable, to advert to and review a few of them.

One of the comparatively recent cases supporting respondent's position is that of *Indemnity Ins. Co. of North America v. Sloan* (C.C.A. 4th), 68 F. (2d) 222, wherein the policies under consideration contained the same standard provision as the one involved here. The effect and weight

of the opinion can best be appreciated if the facts are clearly understood. For that reason, we state them as set forth in the opinion itself:

"The insured in his applications for the policies stated that he was 'vice president and general manager' of the Potomac Glass Company at Cumberland, Md., whose business was that of glass manufacturing, with duties described in the application for the first policy as 'office and traveling,' and in the second as 'executive duties and traveling.' The evidence showed that, when the policies were taken out, the corporation employed about 350 men in its glassworks, and that the insured was in fact the vice president and general manager of the business. He had the management of every department of the factory in which cutting, etching, blowing, gold coloring, finishing, and packing was done. When he was at home he visited every working department daily, walking through to see that the work was being properly done and to give necessary advice and instructions. There was also a foreman in charge of each department who was responsible therefor. The insured was thoroughly familiar with the business, and was personally able, through long experience, to do any of the work required of the men. A large part of his time was spent in traveling, visiting the larger customers, such as Montgomery-Ward, Sears-Roebuck, and the bigger department stores and syndicates. On April 6, 1929, the plant was destroyed by fire, and later the corporation was dissolved. In November, 1929, the insured and his brother established a glass manufacturing business at the nearby town of Lonaconing, Md., under the firm name of Sloan Bros. They also formed a corporation, known as the Lonaconing Cut Glass Company, which operated a plant nearby in the same town. The two businesses were related; certain operations in the course of manufacture being performed at one plant and certain at the other. The number of employees of both plants was about 350. The duties of the insured in connection with these plants were the same as he had performed at the Cumberland Glass Works. After the business was established in Lonaconing, and therefore after the issuance of the policies, the practice of polishing glass by the use of acids was introduced. The insured himself learned the process and testified that on two or three occasions he did the work of polishing samples of goods which had to be shipped out at night. Evidence was offered on behalf of the defendant tending to show that the work of polishing was done more frequently by the insured, but

even this evidence showed that he performed the operations himself only on exceptional occasions in order to instruct the regular polisher; and we must accept as an established fact that *glass polishing was only an occasional and not a habitual duty of the insured,* since the jury were told that, unless they found such to be the case, they must bring in a verdict against him.

"The accident happened on January 5, 1932, about 7 p. m. when the insured returned to the plant of Sloan Bros. after supper and found two samples of glasswork on his desk which were intended for delivery to Sears-Roebuck Company in Chicago. He had previously visited that city in the course of his activities as a traveling salesman, and had been requested to deliver certain samples not later than January 10, 1932, for inspection and comparison by the buyers. It was important that prompt delivery of the samples be made; but the insured observed that they had not yet been polished, and, desiring to send them to Chicago by mail that evening, he undertook, in the absence of the regular glass polisher, to subject them to the polishing process himself. In doing so, some acid accidentally splashed into his eye and destroyed the sight." (Italics ours.)

After stating the facts in that case and then noting the conclusions at which other courts had arrived in their interpretation of the reduced liability provisions of such policies, the court in the *Sloan* case, *supra,* said:

"In our view, these conclusions are well founded, and they fairly establish the rule that the clause, which reduces the liability of the insurer if an accident is suffered in the performance of an act pertaining to a more dangerous occupation, does not apply if the act also pertains to the occupation of the insured, not as an habitual or customary duty, but as one occasional and exceptional. The classification of the risk is not disturbed because it is common knowledge that occasional necessities require the performance of such duties as incidents of the stated occupation. Moreover, the exposure to the greater risk is exceptional and infrequent."

The court further stated that it could not be said, as a matter of law, that the duties of a manager or traveling salesman may not properly include the casual or occasional performance of acts requiring manual skill which are usually done by a workman in a more hazardous occupation. Upon

the facts of the particular case, the court held that the matter was properly left to the jury to determine, from the evidence, whether the actions of the insured at the time of his injury fell within the scope of his stated duties.

The cited case quoted with approval the following statement appearing in *Smith v. Massachusetts Bonding & Ins. Co.*, 179 N. C. 489, 102 S. E. 887, 888:

"We do not construe the expression 'or while doing an act or thing pertaining to any occupation so classed' as more hazardous to mean that if the injury is caused by the doing of an act within the line or scope of the insured's employment, if hazardous, he is to be paid only the diminished amount of insurance, if it also be an act which pertains to a more hazardous business, but as meaning, at most, that if he does a more hazardous act of another occupation, not pertaining to his own, the payment to him shall be reduced as specified."

Another case which supports the position of the respondent herein is *North American Acc. Ins. Co. v. Anderson* (C.C.A. 10th), 100 F. (2d) 452. In that case, the manager of an electric light and power company, in Colorado, was insured under a policy which classified him as a select or "Class A" risk, describing his duties as "manager, office and travelling duties"; the application for the policy described his occupation as one "with office duties only." The policy contained the same standard provision as that quoted above in the case at bar. At the time of his death, the insured had climbed into an electrical substation to observe certain damaged or defective equipment and to determine what replacements he should order to be made, but, presumably, not to make the actual, physical replacements himself. Having made such observation, he was attracted by a noise in another portion of the structure and, while examining an insulator there, was electrocuted.

Defendant's contention in that case was that, inasmuch as the insured's classification in the policy was that of a class A risk, and, at the time of his death, he was doing an act which pertained to an occupation belonging under class B, and classified as more hazardous than that stated in the

policy, the plaintiff was therefore entitled to recover only a reduced amount for the premium paid.

The court, after discussing an earlier Colorado case and citing a number of other cases, including the *Sloan* and *Smith* cases, *supra,* said:

"Under the Colorado holding, the insurance company is liable for the full amount of the policy, though the act done when the accident occurred pertained to a more hazardous occupation than that stated in the policy, if it also pertained to the principal occupation so stated, being done occasionally and incidentally to and in the line of the duties of the principal occupation. It was incumbent upon the insured as manager of a public utility corporation to see that the plant and equipment was in proper order, which necessitated occasional inspection. When so examining, observing or looking, he was still acting as manager."

The case of *Elkins v. Aetna Life Ins. Co.* (S. D. Tex.), 26 F. (2d) 277, presented an analogous situation, under a policy which contained the same standard provision as that with which we are here concerned. The policy was issued to the decedent as a preferred risk, his occupation having been given as "assistant technologist, office and travelling, not visiting mine." The insurance company knew, however, through its agent, that the traveling duties of the occupation given by the insured required him to go into oil and gas fields, and in and about oil and gas wells. The company did not have that occupation classified in its manual, but gave him a classification of "oil well broker, salesman or supply dealer, office duties and travelling." The insured subsequently accepted employment with an oil corporation and was made superintendent, performing executive duties and having general supervision over the production department of the corporation. Upon a certain occasion, a fire broke out in one of the oil fields of the employer. Decedent, with other officers of the company, went to the oil field and, while engaged in doing things "possible to preserve the properties of the company," was killed by an explosion of a pipe some two hundred feet from the nearest well.

In an action brought upon the policy, the insurance company contended that the plaintiff could not recover the face amount of the policy, but must receive less, because the decedent had changed his occupation to one classified by the company as more hazardous, or was injured while doing an act pertaining to an occupation classified by the company as more hazardous, than that stated in the policy. The court rejected the contention, saying:

"Apart from the rule that policies must be construed most strongly against the company, I think as a matter of common justice and fairness it is most unreasonable to say that a person employed in a supervisory capacity passes out of his occupation and becomes a laborer merely because, in an emergency, he puts his brains to work directly by his own hands, instead of by orders through the hands of another, and I think under the evidence in this case that what Tough [the decedent] did was as much in the line of his duties as an officer and agent of the company, as such work, if done by a laborer, would have been in line with his.

"If mistaken in this view of the facts, however, it is yet plain that the deceased was not actually engaged in the occupation of a common laborer, or doing any act or thing pertaining to that as an occupation, but that what he did was merely casual and incidental, and under an emergency, so that, for a much stronger reason, the cases holding that the clause invoked by defendant does not apply to a mere casual act apply here. *Zantow v. Old Line Accident Ins. Co.,* 104 Neb. 655, 178 N. W. 507; *Gottredson v. German Commercial Accident Co.* (C.C.A.) 218 F. 582, L. R. A. 1915D, 312."

In the case of *Fidelity Health & Acc. Co. v. Holbrook,* 96 Ind. App. 457, 169 N. E. 57, affirmed on rehearing, 170 N. E. 346, the facts were: A policy of accident insurance was issued to one Holbrook, who was employed by a company which furnished electrical energy over a large section of country. The policy stated the occupation of the insured to be that of "chief operator, office and superintendent only." The insured met his death by electrocution while seeking to ascertain the cause of trouble affecting the company's distribution system. There was evidence to the effect that Holbrook was responsible for the maintenance of service by the company, and that, although he was not re-

quired to perform physical labor, he nevertheless might do so in the execution of orders, in emergencies, and in showing other men how work was to be done. The policy contained the standard provision relative to change of occupation to one classified as more hazardous than that stated in the policy, or doing any act or thing pertaining to any occupation so classified. The insurance company contended that the plaintiff was entitled to recover only a reduced amount of indemnity, because at the time of his death the insured was doing an act pertaining to the more hazardous occupation of electric lineman.

The court rejected this contention and placed its interpretation upon the provisions of the policy, in the following language:

"Must the clause be construed to mean that the indemnity to be paid will be diminished, if the act done by the insured is an act, including any act pertaining to his own occupation, which may also pertain to another classed by the company as more hazardous? Or does it mean any act pertaining to another occupation classed by the company as more hazardous, but in no way pertaining to his own occupation? Clearly, the language is ambiguous, and the latter construction, which is more favorable to the insured, must prevail. As was said by the North Carolina Supreme Court, when it had under consideration the exact question of construction in an insurance case, except that the insured's occupation was stated as that of foreman and supervision, having overseeing duties only: 'Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used, and the only admissible one. Under the other construction the company would be saying to the insured: "We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to a proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance." ' [Citing cases]."

One of the early cases on the subject is that of *Thorne v. Casualty Co.*, 106 Me. 274, 76 Atl. 1106. The facts in that case may be briefly stated as follows: The policy which was there involved designated the insured's occupation as "Member of Firm or employed by Armour & Co. as Manager of

Gardiner Beef Company." His duties were described as: "Office duties and travelling only." Article 3 of the general agreement read:

"If the assured is injured, fatally or otherwise, while at work pertaining to any occupation classed with this company as more hazardous than that stated in the schedule, the company's liability shall be only for such proportion of the principal sum or other indemnity as the premium paid will purchase at the rate fixed by this company for such increased hazard."

Upon a certain occasion, the insured went into the refrigerating room, which was connected with the office, to direct the transfer of lambs' carcasses from one truck to another. In illustrating to the workmen how to do the work, he took hold of a carcass, and, as he lifted it away from the hook, another carcass just behind swung around, with the result that a projecting bone struck the insured in his right eye and destroyed the sight thereof. Holding that the insured was entitled to recover the full amount of the stipulated sum for surgical operation and loss of the eye, the supreme judicial court of Maine said:

"From the nature of the business then is to be implied the duties and responsibilities of his employment. As head of the concern in Gardiner, he was solely responsible for its management. He was superintendent of every department and responsible for every detail of the business. The designation of his office therefore by necessary implication not only authorized but required him to visit every part of the establishment, to direct in every detail of the work and if necessary point out and illustrate how it should be done. To hold then that a person designated as manager of a business concern could not step from his office, to direct the performance of any part of the work, without being charged under an insurance contract with engaging in work defined in the policy is extra hazardous, would be to put a serious check upon the transaction of business, or cut down the indemnity for which a policy holder had fully paid, and to which he would be otherwise entitled.

"Article 3, above quoted did not contemplate the inhibition of these acts, the performance of which would be necessarily implied from the vocation named in the policy. This

article was rather intended to apply to a regular occupation or business, engaged in by the assured, in a class other than that named in the policy."

Other cases cited by respondent and tending to support his contention are: *Ocean Acc. & Guaranty Corp. v. Rubin* (C.C.A. 9th), 73 F. (2d) 157, 96 A. L. R. 412; *Borovicka v. Bankers Indemnity Ins. Co.,* 289 Ill. App. 51, 6 N. E. (2d) 531; *Womack v. Federal Life Ins. Co.,* 206 N. C. 445, 174 S. E. 313; *King v. Standard Acc. Ins. Co.,* 248 S. W. (Mo. App.) 984; *Schmidt v. American Mut. Acc. Ass'n,* 96 Wis. 304, 71 N. W. 601; *Hoffman v. Standard Life & Acc. Co.,* 127 N. C. 337, 37 S. E. 466.

■ From our examination of the many cases on the subject, we are of the opinion that the weight of authority, the better reasoning, and the demands of justice require us to accept the rule that where an insured is injured while temporarily performing an act which is within the scope of his duties and which is incidental to the occupation under which he was insured, the amount of the indemnity provided in the policy for such injury will not be reduced, even though the act being performed at the time of the injury also pertained to a more hazardous occupation.

■ Under the evidence in this case and the rule just announced, we are well satisfied that respondent comes within the provisions and protection of the policy here involved. His occupation was that of "manager, mining and manufacturing lime." It was but a small plant, employing from five to eight men. Respondent's regular office duties did not consume all of his time. The remainder of his vocational time and attention was devoted to seeing that the plant was kept in operation. To accomplish this, it was necessary, at times, for respondent to substitute for an absent employee; otherwise, it would have been necessary to close down the plant. The necessity for such substitution did not arise often, or customarily, but only occasionally and exceptionally. Under these particular circumstances, respondent's duties as manager would necessarily have a wider range and variety than those of a manager of a larger

corporation, where the duties would ordinarily be more specialized. The only duties excluded by the terms of the instant policy were those of "superintending" and "delivering," neither of which is involved here. We agree with the conclusion reached by the trial judge when he said:

"I think that the evidence introduced shows that the acts upon which the plaintiff was engaged at the time of his accident, having in mind that here was a small mill with a small number of employees, may be said to pertain to the occupation of the insured as stated in the policy not as an habitual customary duty but as one that is occasional and exceptional."

Whether the more hazardous activity engaged in by the insured at the time of his injury was occasional and temporary, or was habitual and protracted, and whether such activity was incidental and referable to his main occupation as classified, or pertained only to a more hazardous occupation, are questions to be decided by the trier of the fact. *Indemnity Ins. Co. of North America v. Sloan, supra.* These questions were submitted to the court for its determination in the instant case, by stipulation of the parties, and the court determined these issues of fact in favor of the respondent.

The trial court's determination of factual issues will not be overturned on appeal, unless this court is of the opinion that the preponderance of the evidence is against the trial court's finding. Our consideration of the record does not enable us to say that the trial court erred in its determination.

In view of our decision in favor of the respondent on his first contention or ground for affirmance of the judgment of the trial court, it is not necessary for us to pass upon the validity of the second ground assigned, *viz.*, that the insurance company is, in any event, liable for the full amount of the indemnity because it is bound by its agent's classification of the insured, made with full knowledge of all facts pertaining to the nature of the insured's occupation.

We are cognizant of the fact that the *Bothell* case, *supra,* is authority against the respondent's contention on this latter

point. However, as shown above, the decision in this case is not rested on the ground on which the *Bothell* case was decided, but entirely on another ground. We therefore do not wish to be understood as now intimating any disapproval of our holding in the *Bothell* case, either by any of the language used in this opinion, or by the fact that, in some of the cases cited in support of the ground on which this opinion rests, criticism is made of the *Bothell* case.

For the reasons herein stated, and upon the authority of the cases hereinabove cited, the judgment of the trial court is affirmed.

MALLERY, C. J., BEALS, and HILL, JJ., concur.

SIMPSON, J., dissents.

---

February 14, 1949. Petition for rehearing denied.