C. E. CARNES & CO., Inc., et al. v. EM-
PLOYERS' LIABILITY ASSUR. CORPO-
RATION, LIMITED, OF LONDON, ENG-
LAND.

No. 8934.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1939.

740

J. W. Hawthorn, of Alexandria, La., Charles A. McCoy, Alvin O. King, Sam H. Jones, and Richard A. Anderson, all of Lake Charles, La., and N. Curtiss Petit-jean, of Rayne, La., for appellants.

Ed Rightor and W. H. Sellers, both of New Orleans, La., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On August 18, 1935, Employers' Liability Assurance Corporation, Ltd., of London, England, issued its policy of automobile liability insurance covering a motor truck owned by C. E. Carnes & Company, Inc., a Louisiana corporation. The limit of liability in the policy was $20,000 for bodily injuries and $5,000 for property damage. The policy was renewed in identical form on August 18, 1936, and the renewal policy was in force and effect on October 21, 1936, when the accident occurred out of which this litigation arises.

Item one of the insurance policy in question states that the occupation or business of the assured is "Handling Farm Machinery, Crane Fixtures & Paints." Item six states the purpose for which the automobile is to be used as "Commercial." Further the policy states, "2. Purpose of Use Defined. * * * (b) the term 'commercial' is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named Assured's business occupation as expressed in Item 1. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

On October 21, 1936, Carnes & Company placed on its truck a removable metal tank containing five hundred gallons of liquid butane gas. The assured's employees, in unloading the tank from the truck, broke off the valve cock. The liquid escaped, vaporized quickly and formed a gas heavier than air. The gas sought the ground and spread through the town of Crowley, Louisiana. It became ignited and killed and injured a number of people and destroyed and damaged much property.

Claims for personal injuries and property damage were made against C. E. Carnes & Company, Inc. This company in turn called upon the Insurance Company to compensate for damage done by the gas. The Insurance Company declined to assume liability, contending that the insurance of the truck did not extend to and cover the hauling and unloading of butane gas.

Plaintiff, Insurance Company, brought this suit (Judicial Code, § 274d, 28 U.S.C. A. § 400) for a declaratory judgment against its assured, C. E. Carnes & Company, Inc., and against the other defendants who were injured or whose property had been damaged by the explosion of the butane gas. It alleged that a controversy had arisen as to its duty to defend claims against the assured resulting from the explosion and prayed for a judgment declaring its "rights, obligations and other legal relations * * * under its policy."

The case was heard on its merits and the court below found that the insurance policy in question did not cover damage and loss which emanated from the hauling and unloading of butane gas. A judgment was there entered which decreed that no obligation rested upon the Insurance Company to compensate the defendants under the policy, and the court enjoined them from "asserting any rights against the plaintiff herein under said policy arising out of said accident." From this judgment C. E. Carnes & Company, Inc., and others, have appealed to this court.

Appellants challenge the right of the insurance company to have a declaratory judgment. They contend that there is a lack of diversity of citizenship, and they seek to set this case apart from such other cases of like import for the reason that by

Louisiana Law, Act 253 of 1918, amended by Act 55, of 1930, the insurance company would not be a necessary party defendant in a suit for damages.

For this insurance company to have a declaratory judgment against the defendants these elements of federal jurisdiction must exist and coexist: First, there must be a diversity of citizenship. Second, there must be, between the parties litigant, an actual controversy. Third, the amount involved must exceed the sum of $3,000.

The insurance company being a foreign corporation and each of the defendants citizens of Louisiana, there is a diversity of citizenship. By Louisiana law each of the defendants have an interest in this insurance policy and in the outcome of this suit. The amount involved is not, as appellants contend, what individual defendants claim by way of damages. This is not a tort action at all and the question of negligence vel non is not before us. The amount in controversy is the value of that which is sought to have declared free from doubt—the policy for $25,000. The Louisiana Statutes providing that one bringing a suit for damages may sue the tort-feasor separately, or bring his suit against the tort-feasor and the insurance company, or against the insurer alone, have no argumentative force here.

Within the meaning of the Declaratory Judgment statute there is here a real, actual controversy admitting of relief. All the elements of federal jurisdiction were clearly shown and the court below had jurisdiction. Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Central Surety & Ins. Corp. v. Caswell et al., 5 Cir., 91 F. 2d 607; Farm Bureau Mut. Auto. Ins. Co. v. Daniel et al., 4 Cir., 92 F.2d 838; Carpenter et al. v. Edmonson, 5 Cir., 92 F.2d 895; Ætna Casualty & Surety Co. v. Yeatts et al., 4 Cir., 99 F.2d 665; Davis v. American Foundry Equipment Co., 7 Cir., 94 F.2d 441, 115 A.L.R. 1486; Stephenson v. Equitable Life Assurance Society, 4 Cir., 92 F.2d 406; Travelers Ins. Co. v. Young, D.C., 18 F.Supp. 450.

On the merits of the case the appellants bring to the fore and stress two contentions: First, that the insurance policy is sufficient on its face to cover the insured truck while transporting butane gas. Second, that appellee, as insurer, is estopped to deny coverage for the reason that its agents knew the truck was hauling butane gas.

When the first policy of insurance was issued on August 18, 1935, the assured was engaged in the business of "Handling Farm Machinery, Crane Fixtures & Paints." Crane Fixtures consisted of "plumbing, fixtures and pipe and general hardware line of the Crane type." At that time butane gas was not handled by Carnes & Company. It was not in the minds of the parties when this contract of insurance was entered into. The transportation of butane gas began four or five months after the contract of insurance. Such adventure was an afterthought. It was an undertaking that found life long after this first contract of insurance. This insurance policy was renewed in identical form on August 18, 1936. Nowhere in the contract is it suggested or remotely intimated that the coverage was to include butane gas. It is not hidden away; it is not in the writing; the evidence does not set it between the lines. Plain and unambiguous is the coverage: "Handling Farm Machinery, Crane Fixtures & Paints," and the loading and unloading of the same. The coverage of butane gas is not there.

Liquid butane gas when not under pressure vaporizes rapidly. At the low temperature of one degree above zero it will boil and vaporize. The liquid becomes gas as soon as pressure is released and it comes in contact with the atmosphere. The gas formed by vaporization is heavier than air and has a tendency to cling to the ground. It is highly inflammable and dangerous when ignited. The dangerous properties of this substance were known to Carnes & Company for its truck carried a bold-lettered sign reading "Butane Gas, Explosives."

If we can bring ourselves to read into this insurance contract a coverage of butane gas, we can just as readily read into it a coverage for the transportation of gasoline, poisons, and dynamite. To do this we must banish the parties, permit our imagination to hold sway, and write into the policy terms never contemplated by them. The effect would be the creation of a new contract.

It is contended by appellants that Dall Thomas, special agent of the Insurance Company, who inspected risks and was in the office of the company, knew that Carnes & Company were transporting butane gas on the truck. The weight of the evidence

does not bear out this contention and the trial court so found. There was no error in this ruling.

█ It is without dispute that Guy L. White, the Crowley agent of the Insurance Company, knew when the policy of insurance was renewed that Carnes & Company, Inc., was engaged in hauling butane gas on the truck. His knowledge would not, under our view of the case, bind his principal.

The appellants seek to bind the Insurance Company by the doctrine of waiver and estoppel. They cite a long line of cases establishing this rule. Gitz Sash Factory v. Union Insurance Society, 160 La. 381, 107 So. 232; Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876; Michael v. Mutual Insurance Company, 10 La.Ann. 737; Union National Bank v. Manhattan Life Insurance Co., 52 La.Ann. 36, 26 So. 800; Demary v. Royal Indemnity Company, La.App., 182 So. 389. We are not unmindful of the rule laid down by these cases, and they speak the law as to the doctrine of waiver and estoppel by the conduct and declarations of insurance companies. These cases shed no light on the issue here. They point out waiver and estoppel and appellants would have them apply where coverage is sought to be extended to the hauling of butane gas, a thing the policy did not originally cover. This cannot be done.

█ It is well settled that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel. The substance of the doctrine of waiver as applied in the law of insurance is that if the insurer with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability.

This is a case where the coverage is sought to be extended. The doctrine of waiver cannot be invoked to create a primary liability, and bring within the coverage of the policy risks not included or contemplated by its terms. Estoppel through the knowledge of Guy L. White, the agent of the Insurance Company, could operate in favor of the insured, Carnes & Company, only to relieve as against the consequences of violation of the terms of the policy and not to extend coverage. H. D. Foote Lumber Co., Inc., et al. v. Svea Fire & Life Ins. Co., 179 La. 779, 155 So. 22; Annotation, 113 A.L.R. 857–871.

The judgment is affirmed.