PACIFIC NATIONAL FIRE INS. CO. v. SMITH BROTHERS DRILLING CO.

No. 30342. Oct. 23, 1945.

*162 P. 2d 871.*

Abernathy & Abernathy, of Shawnee, for plaintiff in error.

Saunders & Van Wagner, of Shawnee, for defendant in error.

OSBORN, J. This action was commenced on August 15, 1939, by Smith Brothers Drilling Company, as plaintiff, against Pacific National Fire Insurance Company, to recover upon a policy of fire insurance. The petition alleged ownership of the property by plaintiff, the execution and delivery of the policy sued upon, the loss by fire of certain property, described in an itemized statement attached to the petition, and the making of proof of loss in due time. It then contained the following allegation:

"Sixth: Plaintiff further states that at the time of the writing of said policy said agent was instructed by the plaintiff to write said policy covering all the equipment included in said itemized statement, which equipment was necessary and a part of said drilling rig, as set forth in said policy, and was informed by said agent that the said policy covered each, all and every part of the equipment, and the property included in the itemized statement hereof." (C.-M., p. 7.)

A copy of the policy sued upon was attached to the petition, and an inventory of the material lost by fire was also attached. The court overruled the general demurrer of the Insurance Company, and it answered admitting the execution of the policy of insurance; denied that the items for which the Drilling Company sought to recover were included in or covered by the insurance policy; pleaded an estoppel on the part of the Drilling Company to seek to extend the coverage of the insurance policy, and by an amendment subsequently filed alleged that the policy was executed and issued upon an agreed annual premium rate of one per cent upon the understanding and agreement that the coverage of said policy was limited to the specific items listed in the inventory attached to the policy, and that no one had authority to agree that the policy should include any additional property except by specific authority, in writing, from its home office upon request for extended coverage, and that no such request was ever made and no such authority ever granted. The Drilling Company's reply was a general denial. The case was tried to a jury. The trial court denied the Insurance Company's motion for judgment on the opening statement of counsel for plaintiff, overruled its demurrer to the evidence and its motion for an instructed verdict at the conclusion of all the testimony, and submitted the cause to the jury, which returned a verdict in favor of plaintiff. Defendant appeals.

From the evidence it appears that the Drilling Company was the owner of a complete set of rotary drilling tools and various other equipment used in connection with the operation thereof; that said tools were covered by an insurance policy of $40,000, which expired on February 17, 1939; that shortly prior to the expiration of said $40,000 policy, the Drilling Company applied to the Insurance Company's agent in the city of Shawnee, Roberts & Lillard, for a new policy of insurance on said rotary rig and equipment in the amount of $50,000, if such policy could be secured at the same rate which they paid for the $40,000 policy, which was one per cent; that at the time of applying for such insurance, Mr. Smith, the president of the Drilling Company, advised the firm of Roberts & Lillard that he had purchased additional equipment in connection with the tools of the value of some eight or nine thousand dollars, and for that reason desired to increase the size of the policy. Shortly after this conversation was

had, Mr. Roberts of that firm called at the Drilling Company's office and procured the $40,000 insurance policy. At that time he was advised by the secretary of the Drilling Company that the new tools and equipment purchased by the Drilling Company were not specifically listed in the schedule attached to the old policy and that it would be necessary to obtain a list of this new material. Mr. Roberts, however, took the policy with him and a few days thereafter delivered the policy sued upon in the present action. The Drilling Company's secretary called Mr. Roberts' attention to the fact that the schedule of property shown in the policy sued upon was identical with that in the old policy. Mr. Roberts assured the secretary that that would be all right, that the policy, as written, would include the additional equipment, and that sometime later they would go down and take an inventory of the additional equipment attached to the drilling rig. The fire which destroyed a portion of this equipment occurred March 1, 1939, and the equipment was never listed by Mr. Roberts or his firm, and no further change was made in the policy.

Mr. Roberts testified that he thought the policy covered all of the tools and other equipment incidental to the operation of the drilling unit as requested by the Drilling Company, and that the Drilling Company was fully protected, and that had he not believed this he would not have delivered the policy. He testified further that Roberts & Lillard had no authority to issue policies of that kind and had no forms in their office; that he sent the information to Mr. Jones, the special agent of the Insurance Company in Kansas City, and talked personally with Mr. Jones about it and that the policy was prepared in the Kansas City office and forwarded to Roberts & Lillard, and that he thereupon executed it for that firm and delivered it. Mr. Jones testified that the policy was prepared to cover only the property in the schedule to the $40,-000 policy which was sent to him by

Mr. Roberts, and that he did not understand that it was to cover all of the tools and equipment incidental to the operation of the drilling unit; that if it had he could not have written it for a one per cent premium, and that he prepared the policy in the exact form requested by Mr Roberts.

After the fire an adjuster for the company made a list of the material destroyed or rendered unfit for use by the fire, and thereafter the Insurance Company denied liability and cancelled the policy.

It appears from the testimony of Mr. Smith, the president of the Drilling Company, that a portion of the property destroyed was set out in the inventory of property attached to the policy, but apparently the greater portion thereof was not.

The Insurance Company makes two contentions: first, that where the language of a fire insurance policy is not ambiguous and fraud or mistake is not pleaded, parol evidence cannot be received to vary or contradict its terms; and second, that a party relying upon a contract differing from the terms of the written instrument sued upon must plead facts entitling him to a reformation of the instrument. We will dispose of these contentions in order.

In support of its first contention the Insurance Company cited Brown v. Connecticut Fire Insurance Co., 52 Okla. 392, 153 P. 173; Atlas Life Insurance Co. v. Spitler, 178 Okla. 537, 63 P. 2d 82; Druggists Mutual Fire Insurance Co. v. Shaw, 170 Okla. 510, 41 P. 2d 69, and Badgett v. Oklahoma Life Insurance Co., 176 Okla. 86, 54 P. 2d 1059. It argues that, under the rule announced in those cases, the contract in the instant case being plain and unambiguous, parol evidence as to information conveyed to the Insurance Company's agent as to the coverage desired, and the assurance by the agent at the time the policy was delivered that the policy covered such property, was not admissible. We cannot agree with this contention.

The cases cited stress the absence of any mistake or fraud in the controversies therein involved. In the case at bar the paragraph of the petition quoted above sufficiently alleges constructive fraud, as defined in 15 O. S. 1941 § 59. While it does not specifically allege fraud, the facts upon which fraud may be predicated are sufficiently stated or may be reasonably inferred. This is sufficient. Fidelity-Phoenix Fire Ins. Co. v. First Nat. Bank of Marietta, 145 Okla. 289, 292 P. 829. The evidence conclusively establishes such facts. The Insurance Company was a foreign insurance company, having its principal office in the State of California, and the firm of Roberts & Lillard was the issuing agent. 36 O. S. 1941 § 126; Home Ins. Co. v. Mobley, 57 Okla. 692, 157 P. 324. Therefore, any act done by the agent in connection with the issuing of said policy was the act of the company itself. Springfield Fire & Marine Ins. Co. v. Simmons, 184 Okla. 323, 87 P. 2d 941. It was the duty of such agent to prepare the policy to cover the property which he was advised by the Drilling Company was to be included therein, and when he assured the secretary of the Drilling Company that the additional equipment was sufficiently covered by the policy, that assurance was relied upon by the Drilling Company and it thereupon accepted the policy. In 26 Corpus Juris, sec. 381, pp. 308, 309, it is said:

"The insurer will not be permitted to avoid the policy by taking advantage of any misstatement, misrepresentation, or concealment, of a fact material to the risk, which is due to the mistake, fraud, negligence, or other fault of his agent and not to fraud or bad faith on the part of the insured. The rule has been applied to a misdescription of the property insured, and to misstatements as to title or interest, encumbrances, other or additional insurance, and the value of the property insured . . ."

In Miller v. Troy Laundry Machinery Co., Inc., 178 Okla. 313, 62 P. 2d 975, we held that the fact that the transaction effected by fraud was evidenced by writing did not prevent the introduction of parol evidence to establish the fraud. To hold that the Insurance Company in the instant case could take advantage of the reliance of the Drilling Company upon the misrepresentation of its agent and thus avoid the policy, so that the Drilling Company would be deprived of the protection for which it had contracted and for which it had paid, or obligated itself to pay, would permit the parol evidence rule to be invoked as a shield for fraud or to be applied so as to work injustice. It cannot be so used. Miller v. Troy Laundry Machinery Co., supra.

In the case last above cited we said:

"If the seller purposely induces the failure to read the contract by the misrepresentation that it contains the agreement of the parties, the negligence of the signer in failing to perceive the misrepresentation is little greater than his negligence in a case where he reads the contract and fails to detect the designed absence therein of an extraneous oral representation of the seller. In both cases there is fraud of the seller and negligence of the buyer."

Further in the opinion we approved the rule announced in the sixth syllabus in Dusbabek v. Bowers, 173 Okla. 53, 43 P. 2d 97, and overruled all other decisions of the court contrary to that rule.

In Commercial Casualty Ins. Co. v. Connellee, 156 Okla. 170, 9 P. 2d 952, we held that where the agent of an insurance company and the insured mutually agreed upon the terms and conditions of an insurance policy, and the policy later issued by the company omitted one of its essential elements, which was not discovered by the insured until after the loss occurred, he was entitled to have the contract reformed and to recover thereon, and that his failure to promptly examine the policy when received and discover that it did not contain the real agreement did not defeat his right to reformation.

The rule announced in these cases stems from the fundamental principle

that one may not profit by his own wrong.

In the case at bar it appears that the policy was not prepared in the office of Roberts & Lillard, but was prepared in the office of the special agent of the Insurance Company at Kansas City and forwarded to Roberts & Lillard, who endorsed it as insuring agent and delivered it to the Drilling Company. From the testimony of Roberts it appears that he did not carefully examine the policy before he delivered it to the Drilling Company and that he delivered it under the mistaken belief that it contained a provision which protected the extra tools and equipment of the Drilling Company. Such mistake on his part would relieve him of any imputation of actual fraud, but its effect was the perpetration of a constructive fraud on the Drilling Company.

We hold that in such case the rule against parol evidence does not apply.

Under its second contention the Insurance Company asserts that before the Drilling Company can recover, it must have the policy reformed; that there is no allegation of fraud or mistake upon which to base reformation; that the contract of insurance delivered to the Drilling Company was the contract agreed upon between the Drilling Company and the Insurance Company, and that therefore the Drilling Company would not be entitled to reformation in a proper action. We have already held that the petition stated sufficient facts to allege constructive fraud. The petition sufficiently shows that the policy attached thereto did not contain the real contract between the parties; that the Drilling Company was induced to accept said contract by the unintentional misrepresentations of the agent Roberts, and that it was entitled to judgment on the real contract. This was sufficient to entitle it to reformation. Prudential Fire Ins. Co. v. Stanley, 191 Okla. 506, 131 P. 2d 88; Commercial Casualty Ins. Co. v. Connellee, supra.

The fact that the Drilling Company did not specifically ask for reformation and that the court did not formally reform the contract does not warrant a reversal of the judgment. Fidelity-Phoenix Fire Ins. Co. v. First Nat. Bank, supra. In that case the court held:

"Where the pleading and evidence in a case are sufficient to warrant reformation of a fire insurance policy and sustain a recovery thereon, failure to ask for and obtain a formal judgment of reformation will not affect or warrant a reversal of the judgment where it is otherwise sufficient."

The court submitted the case to the jury under instructions to find for the Drilling Company in the event it found that the policy which it was agreed should be issued to it covered the property destroyed by the fire. By its verdict the jury so found. The court, in rendering judgment upon that verdict, necessarily treated the contract as reformed and, under the cases above cited, it could properly do so.

Affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, WELCH, DAVISON, and ARNOLD, JJ., concur.