**UNITED PAC. INS. CO. v. NORTHWEST-
ERN NAT. INS. CO. et al.**

No. 4085.

United States Court of Appeals
Tenth Circuit.

Nov. 13, 1950.

Rehearing Denied Dec. 7, 1950.

Edgar C. Jensen and John H. Snow, Salt Lake City, Utah (Robert A. Burns, Salt Lake City, Utah, on the brief), for appellant.

Dennis McCarthy, Salt Lake City, Utah (Leonard S. Ralph, Zar E. Hayes and E. L. Schoenhals, all of Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This was a declaratory judgment action instituted in the United States District Court for the District of Utah by the United Pacific Insurance Company, the appellant, herein called the insurance company, against Don Ogden, the insured, and others, to construe and determine the liabilities and rights of the parties under an owner's, landlord's, and tenant's liability insurance policy. The policy covered bodily injury liability and property damage liability arising out of the ownership, maintenance and use of Ogden's premises situated at 118 North Main Street in Richfield, Utah. The policy

in controversy was issued August 1, 1948. It was a renewal of an identical policy issued August 1, 1947. The pertinent parts of the policy are as follows:

"Coverage B.—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages arising out of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards defined in and covered by the schedule of declarations and special provisions."

The declarations read in part as follows:

"1. The named insured is Don M. Ogden d.b.a. Don's Sport Shop.

"2. Post Office address of insured 118 North Main, Richfield, Utah.

\* \* \* \* \* \*

"6. Detail of insured premises, elevators, property, exposures, purposes of use thereof and method of premium computation:

"Division 1—Premises, Operations, Property."

(Here follows a description of the area and the address of the premises.)

"Stores—Clothing or Wearing Apparel—Retail. (135)."

With regard to the declarations the policy reads:

"O. Declarations—By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

The special provisions in part read:

"The hazards shown to be covered in the declarations of this policy are defined below, subject to the agreements, conditions and declarations of this policy:

"1. Definition of Hazards: Division 1—Premises, Operations—*The ownership, maintenance or use, for the purposes stated in the declarations,* of insured premises or property, and all operations occurring during the policy period which are necessary or incidental thereto \* \* \*." [1]

Appellant's prayer for a declaration of non-liability was predicated on its assertions that the policy covered only hazards and liabilities arising out of the operations of the retail clothing and wearing apparel business, known as Don's Sport Shop, and did not cover liabilities arising out of Ogden's operations in the same place of a business carried on in the name of Sevier Valley Liquid Gas and Appliance Company. The fire and resulting loss arose out of the operation of the latter business.

Ogden's affirmative defense and cross demand were that the policy covered both operations; that the insurance company knew the facts of the operations of the Gas Company business; and that the policy was issued with the intent of covering Ogden's entire operations on the premises. Ogden also pleaded estoppel in that he alleged that prior to the occurrence of the fire, three officers and agents of the insurance company visited and inspected the insured premises and thereby had knowledge of the gas and appliance business conducted thereon.

The following pertinent facts were found by the trial court and are not challenged by any of the parties to this appeal.

In the summer of 1946, Ogden commenced the operation of a store at 118 North Main Street. He handled sporting goods of all types, including sport clothing, and in addition handled paints, varnishes, and wall paper. This business was carried on under the name of Don's Sport Shop. In September, 1946, he began handling stoves, heaters, refrigerators, butane gas appliances and propane gas. This business was carried on under the name of the Sevier Valley Liquid Gas and Appliance Company. Both names appeared on the windows of the building. Under the latter business, Ogden engaged in the filling of butane and propane gas containers, as well as selling the containers. At the beginning of the operation, the containers were filled from a truck owned by Ogden and equipped for that purpose. Later a large storage tank

---

1. Emphasis supplied.

was erected at the edge of the city and the containers were filled from this tank. On occasion some of Ogden's customers would leave small empty gas containers at the store for the purpose of having them filled. These would be taken to the storage tank where they were filled. When filled, some of them would be delivered to the customers by truck, and others would be returned to the store to be called for by the customers. No butane or propane gas was kept at the store for the purpose of filling the gas containers.

A fire resulted at the insured premises from a leak in a defective container which had been filled at the storage plant and brought to the insured premises for delivery to the customer. This resulted in extensive damage to the insured building, as well as to adjoining buildings.

During all the times herein material, Ray E. Carr, was soliciting agent for the insurance company, as well as for other insurance companies. As such, he solicited insurance on behalf of the company. He had authority to classify risks accepted by appellant, countersign policies of insurance issued by the company, deliver policies, collect premiums, and in some instances investigate losses. He received compensation on a commission basis.

Prior to the issuance of the original policy, Carr and Ogden had some discussions about a liability policy on Ogden's butane operations. As a result thereof, on May 6, 1947, Carr wrote the insurance company, as follows: "Please get me information relative to writing a CLP for a partnership handling butane and propane gas and appliances. They have a large—6,000 gal.—storage tank and fill small tanks for individuals and sell appliances."

The company replied by letter that in view of previous disastrous experiences with such business, it did not desire to write this insurance and referred him to another company where it might be obtained. The company's reply to Carr's letter was made known to Ogden.

In June or July, 1947, Carr and Ogden discussed a policy of owner's landlord's and tenant's liability coverage for all of Ogden's operations at 118 North Main Street. As a result the original and renewal policies were issued. Ogden testified that he told Carr that he wanted a policy which would cover all operations at 118 North Main Street, and that Carr represented that the policy which he proposed would cover all such operations, and that it was then that he authorized Carr to obtain the policy. Carr also testified that it was his and Ogden's intention to cover all operations at Ogden's place of business, including the handling of filled gas containers. [2]

It is conceded that Ogden furnished the information, "Don Ogden d.b.a. Don's Sport Shop," and "Stores—Clothing or Wearing Apparel—Retail," as written into the declaration and that Carr selected the classification, "Retail (135)."

The trial court held that the insurance company could not challenge the classification of the risk inserted in the policy by Carr since Carr made the classification with full knowledge of the material facts and without any misrepresentation or concealment on the part of Ogden. The trial court concluded that the Insurance Company was obligated to pay on his behalf all sums which he had become obligated to pay by reason of liability imposed upon him by law or any damages to adjoining buildings, and to defend Ogden in any actions brought by reason thereof. [3]

The court found that appellant was liable to Ogden for $500.00 attorney's fees for services rendered by Ogden's attorney in an

2. While not decisive of the issues, it is worthy of note that prior to the controversy between Ogden and the Insurance Company, Carr had given the company a written statement stating that it was not his intention to cover the gas business and that he was convinced that Ogden understood that the policy did not cover such operations. He also testified that

he was friendly to Ogden and wanted to see him recover.

3. The trial court's finding with respect to the claims of Northwestern National Insurance Company and J. Vernon Erickson by reason of loss by fire is not involved in this appeal and reference thereto is therefore omitted.

action brought against him by Monarch Fire Insurance Company and the Richfield Commercial and Savings Bank, and for an additional attorney's fee of $500.00 for services rendered by Ogden's attorney in the declaratory judgment action.

This is not a case in which the insurance company seeks to avoid liability on the ground that the operations on the insured premises or the purposes for which the insured premises were used were misstated or not fully set out in the declaration. The company's position is that it has no liability because the accident which caused the fire was not one arising out of the hazards defined in and covered by the schedule of declarations and special provisions, and therefore the liability of Ogden for the fire damage was not a liability within Coverage B.

■ The question then is, what is the coverage of the insurance contract? The rule of law that in the absence of fraud or mutual mistake, or unless the written terms of the contract are ambiguous, parol testimony of what occurred prior to or contemporaneous with the execution of the contract will not be received to vary the terms of the written instrument, applies with the same force to insurance contracts as to contracts generally.[4]

There is no contention here that there was fraud in the execution of the contract and we find no uncertainty or ambiguity in the terms or provisions of the policy. The legal effect thereof must, therefore, be determined from a consideration of the policy itself.

The business covered was "Don M. Ogden d.b.a. Don's Sport Shop—Stores—Clothing or Wearing Apparel—Retail (135)." By no stretch of the imagination can this be construed to include a business selling at retail propane or butane gasoline. The description of the business as written into the insurance contract was furnished by Ogden and his partner. It was written into the application or declaration verbatim as furnished by them and was thus carried forward into the policy. All that Carr did was to add the classification "NOC 135." "NOC 135" is a classification used in the insurance manual to designate stores not otherwise classified therein. The insurance manual contains the description of a considerable number of distinct businesses not specifically designated by a separate classification number. Some of these classifications appearing in the manual are:

"Stores—Laundries, N.O.C. 135
"Stores—Auction, N.O.C. 135
"Stores—Delicatessen, N.O.C. 135."

It can thus be seen that the extent of coverage cannot be determined from the classification number NOC 135 alone. It is also of some significance that the manual contains a classification of a propane or butane dealer as follows:

"Gases—liquified petroleum (retail dealer) 10,000 lbs. 180s."

"This classification includes propane or butanes or any mixture thereof."

■ It would seem that if it had been intended to cover Ogden's retail butane operations, this classification would have been selected. Construed in its entirety, the provisions of the contract dealing with coverage can mean only that the company was liable for damages resulting from the operation of a retail sports shop store, selling clothing or wearing apparel, and such other merchandise as is usually handled therein.

Furthermore, Ogden will not be heard to say that the agreement between him and Carr was for a broader coverage than was written into the contract. Ogden, over his own signature, agreed that the statements in the declarations were his representations. The policy was issued in reliance thereon. It expressly embodied all the agreements between the parties in the written contract.

4. Northern Assur. Co. v. Grand View Bldg. Ass'n, 183 U.S. 308, 22 S.Ct. 133, 46 L.Ed. 213; Lumber Underwriters v. Rife, 237 U.S. 605, 35 S.Ct. 717, 59 L. Ed. 1140; Home Insurance Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868; Deming Investment Co. v. Shawnee Fire Ins. Co., 16 Okl. 1, 83 P. 918, 4 L.R.A.,N.S., 607; United States Fidelity & Guaranty Co. v. Town of Comanche, 114 Okl. 237, 246 P. 238; Ostroff v. New York Life Ins. Co., 9 Cir., 104 F.2d 986.

By the written provisions of the policy it limited the insurance company's liability to hazards defined in the coverage set out in the declaration and the special provisions.

■ Neither can Ogden escape the effects of these provisions by not having read the policy when it was delivered to him and thus failing to discover that it did not contain the broad coverage for which he now contends. It was his duty to read the policy when it was delivered to him and he is charged with knowledge of its provisions, notwithstanding his failure to do so.[5]

The trial court placed strong reliance on Pacific Mutual Life Insurance Co. v. Snowden, 8 Cir., 58 F. 342, and New York Accident Insurance Co. v. Clayton, 8 Cir., 59 F. 559. But, these cases are distinguishable on the facts. In the Snowden case, the insured was engaged in the cattle business. He applied for a 90-day accident policy for $10,000. He made a full, complete and correct disclosure of his operations to the company's agent, including the fact that he occasionally accompanied cattle to market. He stated he wanted complete and full coverage. The company had placed in the hands of its agent, a manual classifying risks and authorizing the agent to make the classification of the risk, from which the premium was then determined. In the manual a cattle dealer or broker, not tender or drover, on farm or ranch was classified as a preferred risk. A cattle shipper and tender in transit was classified extra-hazardous and carried a higher premium. Based upon the true and correct information given him by the applicant, the agent gave Snowden a preferred risk classification, and as such he was insured by the company. He was hurt while in transit with a load of cattle to market and the company denied liability on the ground that he should have been classified in the extra-hazardous classification, and since his injury resulted from an extra-hazardous occupation, he was not covered by the preferred risk policy. The insurance company sought to avoid responding to its liability on the basis of the coverage it wrote into the policy on the ground the insured, in his application for the policy, made misrepresentations amounting to warranties. But, the court held that the insured had correctly stated the nature of his business to the agent, who, with full knowledge of the nature thereof, selected the classification, and the company, therefore, could not escape liability, because the agent, who had authority to select the classification from the description of the business given by the applicant for insurance, had selected the less hazardous classification. As pointed out above, here no such facts are present. But here, as already stated, Ogden furnished the description of his business which was correctly written into the policy and determined the coverage thereof.

■ Ogden seeks to extend such coverage beyond the clear terms and provisions of the policy on the ground of waiver or estoppel. He makes these contentions on the ground that Carr stated and represented to him that the policy covered all its operations. However, it is well established in the authorities that coverage may not be extended by waiver or by estoppel.[6]

■ Neither is Ogden's further contention that the insurance company is estopped to deny liability by Carr's representations that the policy as delivered covered all his operations at his place of business helpful to him. Such statement constitutes no more than Carr's interpretation of the coverage. Carr was not a general agent. It is not necessary to decide whether a general agent could bind the company by his representations as to the legal effect of the policy. It is sufficient to say that interpreting contracts of insurance is not within

---

5. Madsen v. Prudential Ins. Co., Sup., 35 N.Y.S.2d 607; Minsker v. John Hancock Mutual Life Ins. Co., 254 N.Y. 333, 173 N.E. 4, 81 A.L.R. 829; Taylor v. American Liability Co., 6 Cir., 48 F.2d 592; Rinker v. Aetna Life Ins. Co. of Hartford, 214 Pa. 608, 64 A. 82.

6. Fidelity & Guaranty Fire Corp. v. Bilquist, 9 Cir., 99 F.2d 333; C. E. Carnes & Co. v. Employers Liability Assur. Co., 5 Cir., 101 F.2d 739, and cases cited therein.

the scope or authority of a special agent such as Carr. [7]

Error is also predicated upon the court's allowance of attorney's fees against the company. Prior to the institution of this action, the Monarch Insurance Company and Richfield Commercial and Savings Bank brought an action against Ogden based upon the fire in question. Appellant declined a tender of the defense of that action by Ogden. The trial court entered judgment for $500.00 for legal services incurred by Ogden in that case, and an additional $500.00 for legal services in this case.

■ The right to recover attorney's fees as part of the cost of an action did not exist at common law. In the absence of an agreement, the right thereto is purely statutory.[8]

Appellant makes the statement that there is no Utah Statute authorizing attorneys' fees as costs in cases such as these. This statement is taken by us to refer to actions on insurance contracts and not necessarily to a declaratory judgment action. This statement is not challenged by appellees. Our search has failed to reveal a Utah Statute dealing with attorneys' fees in insurance cases.

■ The right of Ogden to attorney's fees then depends upon the contract of insurance. The contract provides that: "As respects such insurance as is afforded by the other terms of this policy the company shall: (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent * * *."

The rule is that under such provisions, the company is bound to defend only suits alleging a cause of action which brings the case within the coverage of the policy. The company is not bound to defend any action not falling within the coverage of the policy. [9]

The judgment is accordingly reversed in toto and the cause remanded to enter judgment in favor of appellant.

PICKETT, Circuit Judge (dissenting).

The trial court found that the plaintiff's agent Carr, solicited business on behalf of the plaintiff, classified insurance risks, countersigned and delivered policies, collected premiums, investigated claims, and was paid on a commission basis; that in the negotiations between Ogden and Carr, Ogden stated that he desired a policy which would cover all of his operations at the store; that Carr advised him that the type of policy which he proposed would give such complete coverage; that at the time of these negotiations Carr had full knowledge of all the operations conducted by Ogden at his store including the fact that butane was handled there; that Carr was fully aware of the procedure by which empty gas cylinders were left at the store by customers and were brought back when filled; that Carr and Ogden intended that the policy should cover the risk of these operations; that pursuant to this understanding, Ogden agreed to purchase the policy; that Carr forwarded to the plaintiff's office in Salt Lake City, Utah, a memorandum setting forth the type of policy to be issued including the classification of the risk upon which the premium rate was based; that the classification of risk was selected by Carr from the company's manual of rate and risk classifications upon his own initiative and with full knowledge of the business conducted by Ogden; that such classification was without the knowledge of or consultation with Ogden; that Carr requested the company to issue an Owners',

7. Union Life Ins. Co. v. Burk, 10 Cir., 169 F.2d 235; Anderson v. Aetna Life Ins. Co., 303 Ky. 322, 197 S.W.2d 781; Madsen v. Prudential Ins. Co., Sup., 35 N.Y.S.2d 607.

8. 14 Am.Jur. 38; 20 C.J.S., Costs, § 218, pp. 456, 458.

9. American Fidelity Co. v. Deerfield Valley Grain Co., D.C., 43 F.Supp. 841; ElDorado Refining Co. v. United States Fidelity & Guaranty Co., 157 Kan. 198, 139 P.2d 369, 371; United Waste Mfg. Co. v. Maryland Casualty Co., 85 Misc. 539, 148 N.Y.S. 852, affirmed 169 App. Div. 906, 153 N.Y.S. 1148; Pickens v. Maryland Casualty Company, Neb., 2 N. W.2d 593.

Landlords' and Tenants' liability policy to Ogden describing the risk as "Approx. 25 x 100 Retail NOC. 135,"; that plaintiff accepted Carr's classification of the risk and issued the policy which was countersigned by Carr and delivered to Ogden. These findings are supported by the evidence.

It is a general rule that when a policy of insurance is issued the terms set forth in the policy constitute the contract between the parties. Ordinarily parol evidence will not be admitted to vary the terms of the policy. Lumber Underwriters v. Rife, 237 U. S. 605, 609, 35 S.Ct. 717, 59 L.Ed. 1140; Northern Assurance Co. v. Grand View Building Association, 183 U.S. 308, 321, 22 S.Ct. 133, 46 L.Ed. 213; Field v. Missouri State Life Insurance Co., 77 Utah 45, 290 P. 979, 982. Neither is there any doubt that the coverage of any policy cannot be extended by waiver or estoppel. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F.2d 739, 742; Carew, Shaw & Bernasconi v. General Casualty Co., 189 Wash. 329, 65 P.2d 689, 692. It seems to me, however, that we have a different situation in this case than in those cited above and others relied upon by the plaintiff. Here the insurance contract negotiated and purchased was not the one delivered to the purchaser. It is without dispute that Ogden desired a policy that would cover his entire operations at his store and that Carr, representing the company, intended to deliver a policy for such coverage. The actual contract intended was for such coverage. The company's agent and the insured thought that this had been accomplished. Carr requested the company to "write OL&T for the above 50/100/50—approx. 25 x 100 retail. NOC. 135—$19.55"[1] and "represented to him that he was getting complete coverage on all his operations." The record does not disclose where the company obtained the description of hazard shown on the policy as "Stores—Clothing or Wearing Apparel—Retail (135)." The delivered policy, if construed as claimed by the company, was not the contract negotiated; and to permit the company, after a loss had been incurred, to avoid liability would constitute a constructive fraud or at least inequitable conduct.

Where parties to an instrument intend to accomplish a particular object, and because of mutual mistake or misunderstanding such purpose is not accomplished, equity may reform the instrument to effectuate the intention.[2] In such cases courts of equity will not alter the terms of a written instrument unless required to do so by clear and convincing evidence. Columbian National Life Ins. Co. v. Black, supra; Shell Pet. Corp. v. Corn, supra. That strict requirement is met here as the evidence is uncontradicted as to what the company's agent and Ogden intended. The fact that the coverage claimed would carry a higher premium would not prevent reformation in the absence of collusion or fraud. Plaintiff's agent had a rate book; the rates were exclusively within his knowledge; he knew what the risk was and made the selection which fixed the rate and he advised the insured that the policy covered the business and that the company had accepted the premiums. In Ohio Casualty Ins. Co. v. Callaway, 10 Cir., 134 F.2d 788, 790, this court said: "Knie was a policy writing agent, and as such was authorized to enter into insurance contracts for and on behalf of the appellant, and his statements and conduct in connection therewith are binding upon his principal. Commercial Casualty Ins. Company v. Connellee, 156 Okl. 170, 9 P.2d 952; Home Insurance Company of New York v. Sullivan Machinery Company, 10 Cir., 64 F.2d 765; Westchester Fire Insurance Company v. Federal Na-

1. NOC meaning "Not Otherwise Classified" and referred to stores selling miscellaneous items which couldn't be classified under any one heading.

2. Restatement, Contracts, Sec. 504; Williston on Contracts, Vol. 3, Sec. 1585; Philippine Sugar Estates Development Co. v. Government of the Phil. Islands, 247 U.S. 385, 389, 38 S.Ct. 513, 62 L.

Ed. 1177; Griswold v. Hazard, 141 U. S. 260, 283, 11 S.Ct. 972, 35 L.Ed. 678; Shell Pet. Corp. v. Corn, 10 Cir., 54 F. 2d 766, 769; Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 573, 71 A.L.R. 128; Russell v. Shell Pet. Corp., 10 Cir., 66 F.2d 864, 866; Dietrich v. Retailers' Fire Ins. Co., 137 Kan. 533, 21 P.2d 900, 904.

tional Bank, 135 Okl. 47, 273 P. 889, 891; Commercial Casualty Insurance Company v. Varner, 160 Okl. 141, 16 P.2d 118; United States Fire Insurance Company of New York v. Rayburn, 183 Okl. 271, 81 P.2d 313. He knew the type and the kind of risk to be insured; he also knew that with the attached endorsement, the insured would not have full coverage, and he had, according to the testimony, agreed to write a policy covering every accident, every fire, and every damage. The insured relied upon his representations by accepting the policy and paying the premiums thereon, and having the same delivered to the bank along with the fire insurance policy. True, if the insured had read the policy, he would have found that it did not cover every accident and every damage, but in these circumstances we think the insured's failure to read the policy did not amount to negligence barring reformation."

Ogden has relied upon the defense of estoppel. Courts of equity are within their rights to see that equity is done, whether it is called waiver, estoppel, constructive fraud or inequitable conduct. Here, the pleadings, the evidence and the court's findings show that the policy did not contain the actual agreement between the parties. The judgment is correct upon the real contract; the fact that reformation was not sought would not warrant a reversal as the judgment upon reformation would be the same. Pacific Nat. Fire Ins. Co. v. Smith Bros. Drilling Co., 196 Okl. 74, 162 P.2d 871, 874.

I am also satisfied that the company is not in position to complain about the classification. The agent had full knowledge of the business of insured and represented to him that the policy in all respects covered this business. The insured paid for the policy relying on the agent to properly describe his business and classify the risk. The company should be bound by the terms of the contract as it was entered into and understood between the agent and the insured. To hold otherwise would require every insured to examine his policy then make a study of the company's rate structure and methods of classification of risks, which he knows nothing about, and in most cases consult an attorney or other expert, or request information from the company's home office, to determine his coverage regardless of what he ordered or what the agent represented to him. Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93; cases collected 29 A.L.R. 99; Bryan v. Travelers Ins. Co. 32 Wash.2d 289, 201 P.2d 502, 8 A.L.R.2d 467, cases collected 8 A.L.R.2d 500. The policy described the risk as "Stores—Clothing or Wearing Apparel—Retail. (135) (a) 2500' .446 .12 12.40 7.55". I doubt if reading this technically worded policy would have been much help to the insured. The description does refer to "clothing and wearing apparel." It also refers to "stores" and numbers which have no meaning except possibly to the company. There is a familiar rule of construction of insurance contracts that if there is any ambiguity it shall be construed against the insurer who prepared it. Cases collected 8 A.L.R.2d 493. The clothing and wearing apparel business of the insured was limited to sport jackets and shirts and composed a small portion of his business. I do not believe that the liability of the insurance company should be limited to the selling of shirts or sport jackets. I find nothing in the Utah law or decisions contrary to the above views. Kelly v. Richards, 95 Utah 560, 83 P.2d 731, 129 A.L.R. 164; Sullivan v. Beneficial Life Ins. Co., 91 Utah 405, 64 P.2d 351; Bednarek v. Brotherhood of American Yoemen, 48 Utah 67, 157 P. 884; Ellerbeck v. Continental Casualty Co., 63 Utah 530, 227 P. 805; Field v. Missouri State Life Ins. Co. (Utah), supra; Loftis v. Pac. Mutual Life Ins. Co., 38 Utah 532, 114 P. 134; Osborne v. Phenix Ins. Co., 23 Utah 428, 64 P. 1103; Parker v. California State Life Ins. Co., 85 Utah 595, 40 P.2d 175; West v. Norwich Union Fire Soc., 10 Utah 442, 37 P. 685.

In Osborne v. Phenix Ins. Co., supra [23 Utah 428, 64 P. 1104], it is said: "In regard to the second ground, it is alleged in the complaint that at the time the policy in this case was executed the agent who acted for the company was informed that there was another policy on the property. If that were so, and the jury must have so

found, the company is estopped from denying, notwithstanding the provisions of the policy respecting other policies, its liability, on the ground that there was another policy on the property at the time the one in question was issued."

I would affirm the judgment as it fixed liability on the plaintiff.

