L.Z. GENTRY, d/b/a Gentry Enterprises, Inc., and L.Z. Gentry, individually, Appellees,

v.

AMERICAN MOTORIST INSURANCE COMPANY, Appellant.

No. 75737.

Supreme Court of Oklahoma.

Jan. 18, 1994.

---

Robert H. Mitchell, Oklahoma City, for appellees.

Stephanie J. Mather, Chandler, for appellant.

ALMA WILSON, Justice:

In 1982, L.Z. Gentry, appellee/counter-appellant, began planning to construct a condominium project known as Rockwell Gardens. He contacted his insurance agent, Tom Lanthrop, agent for American Motorists Insurance Co., appellant/counter-appellee, concerning the purchase of an all-risk policy. Gentry had done business with Lanthrop as his insurance agent since about 1972. Gentry specifically asked if the policy covered theft, and Lanthrop replied that it did. Gentry was not informed that the policy excluded theft by his employees, officers, directors or trustees in the construction of the project.

While building the project, Gentry's contractor wrongfully took building material intended to be used in the construction, and funds advanced by Gentry for the purchase of building material. The contractor was subsequently arrested and pled guilty to one count of obtaining money under false pretense and three counts of embezzlement by trustee. But when Gentry made a claim on his insurance policy, his claim was denied because the policy excluded losses arising from fraudulent, dishonest or criminal acts committed by the insured or any employee, officer, director, partner, or trustee of the insured, or by any others to whom the property covered by the policy had been entrusted.

Gentry filed suit in district court, claiming actual damages, punitive damages for bad faith and attorney fees. The trial court sustained the insurance company's demurrer to the evidence on the punitive damages. The court submitted the claim for actual damages to the jury, which returned a verdict in favor of Gentry for $73,000.00. The trial court awarded attorney fees. After the insurance company appealed, the Court of Appeals reversed and remanded the cause for a new trial, holding that the trial court had improperly instructed the jury.

On remand, the case was retried to the court upon the trial record made during the original trial. The parties presented oral argument upon the issues of mutual mistake and constructive fraud. Finding the parties had made a mutual mistake, the trial court reformed the insurance contract, awarded Gentry $31,439.43 for actual damages and $14,986.00 for attorney fees. The insurance company appealed and Gentry counter-appealed. The Court of Appeals concluded there was no evidence demonstrating mutual mistake. It reversed and remanded with instruction to enter judgment in favor of the insurance company. We previously granted certiorari.

## I. Constructive Fraud

Gentry argues that even if the reformation of the contract by the trial court were not supported on the legal doctrine of mutual mistake, it was supported by constructive fraud and upon that ground the judgment must be upheld. Where a trial court's decision is correct, it must be upheld even though it is rested upon an erroneous legal theory. *Heiman v. Atlantic Richfield Co.*, 807 P.2d 257, 262 (Okla.1991). Gentry presented evidence and argued that the insurance agent either did not know that theft by Gentry's contractor was excluded or he misled Gentry by failing to explain to him that such theft was excluded. We hold that the judgment of the trial court to reform the contract is supported by the legal theory of constructive fraud.

The record reveals that the insurance agent, Lanthrop, admitted that Gentry specifically asked for an "all-risk" insurance policy which would cover all the risks of the construction job he was undertaking, and that Gentry specifically asked if the policy included "theft." Lanthrop admitted during cross examination that neither employee dis-

honesty nor embezzlement were ever discussed when the contract was being negotiated. Lanthrop further testified that had he been asked, he would have answered that embezzlement was not covered. Gentry testified that he did not know embezzlement was excluded. When asked on cross examination if he and Lanthrop discussed any specific type of theft, Gentry answered, "A thief is a thief as far as I was concerned." The evidence establishes that during the negotiations, the only party who knew what exclusions were in the "all-risk" insurance policy was the insurance agent, and that Gentry was not informed of the exclusion.

Title 15 O.S.1991, § 59 [1] provides:

Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

■ In contrast with actual fraud, constructive fraud does not require an intent to deceive. "Liability for constructive fraud may be based on a negligent misrepresentation. Even an *innocent misrepresentation* may constitute constructive fraud where there is an underlying right to be correctly informed of the facts." *Faulkenberry v. Kansas City Southern Railway Company,* 602 P.2d 203, 206 (Okla.1979), at footnote 6.

An example of constructive fraud is found in *Pacific Nat'l Fire Ins. Co. v. Smith Bros. Drilling Co.,* 196 Okla. 74, 162 P.2d 871 (1945). The insurance agent in that case believed that certain tools were covered by the insurance policy and represented them to be covered to the insured. But the tools were not covered by the policy and a fire destroyed them. This Court held that where a policy did not contain the real contract between the parties, and the insured was induced to accept the contract by the unintentional misrepresentations of the insurance agent, the insured was entitled to judgment on the real contract and was entitled to reformation. *Pacific Nat'l,* 162 P.2d at 874. The case cited *Commercial Casualty Ins. Co. v. Connellee,* 156 Okla. 170, 9 P.2d 952 (1932) as holding:

[W]here the agent of an insurance company and the insured mutually agreed upon the terms and conditions of an insurance policy, and the policy later issued by the company omitted one of its essential elements, which was not discovered by the insured until after the loss occurred, he was entitled to have the contract reformed and to recover thereon, and that his failure to promptly examine the policy when received and discover that it did not contain the real agreement did not defeat his right to reformation.

*Pacific Nat'l,* 162 P.2d at 874. "The rule announced in these cases stems from the fundamental principle that one may not profit by his own wrong." *Pacific Nat'l,* 162 P.2d at 874.[2]

---

1. R.L.1910, § 904.

2. *Oklahoma State Union of the Farmers' Educational and Cooperative Union of America v. Keathley,* 291 P.2d 1031 (Okla.1956) cites *Pacific Nat'l* as support for its holding. In that case Keathley made application to the Union for hail insurance on his wheat crop. For his premium he gave his personal note secured by a chattel mortgage on the wheat. When his crop was damaged by hail an adjuster came to view the damage and had Keathley sign a release of claim on his proof of loss. Keathley presented evidence that the adjuster had represented the release as simply an acknowledgement by Keathley that the adjuster had inspected the loss. Keathley did not have his glasses and was unable to read the instrument he signed. When Keathley

tried to sue on his loss, the Union used the release as a defense. The Court stated its holding in the Syllabus by the Court, that the inducement by the adjuster to sign the instrument constituted fraud and was sufficient to vitiate the instrument. The Court further held that whether the person signing the instrument was negligent in failing to use diligence or ordinary prudence to discover the falsity of the representation was immaterial. Besides citing *Pacific Nat'l* as support for its holding, the Court also cited *Bowersock v. Barker,* 186 Okla. 48, 96 P.2d 18, 19, 127 A.L.R. 130 (1939) (holding that "One who is fraudulently induced to execute a written contract by the oral misrepresentation of the opposite party may always show that fact in evidence when he bases his defense on fraud in inducing the making of the contract. And he may do this, even though the contract sued on provides that

In *Ohio Casualty Ins. Co. v. Callaway*, 134 F.2d 788 (10th Cir.1943), the insured asked the insurance agent if the policy covered the insured's butane truck against "every accident, every fire, and every damage." The insurance agent assured the insured that he was covered. The policy was delivered to the bank that held the mortgage to the vehicle. The insurance agent knew that an endorsement to the policy had been attached that excluded any loss, claim, or damage, resulting from fire, combustion, or explosion of any commodities being loaded on, unloaded from, or transported on the insured vehicle. The insurance company issued the policy, but wrote the agent asking that he have the insured sign the exclusion endorsement. Almost two months later, the agent sent a copy of the endorsement to the insured's home and asked that he sign it. The letter was received the day an accident and explosion occurred, which would have been excluded by the terms of the policy. The insured never signed it.

The Tenth Circuit noted that the agent knew the type and kind of risk to be insured, knew that the insured would not have full coverage with the attached endorsement, and yet agreed to write a policy covering every accident, every fire, and every damage. The insured accepted and relied upon those assurances. The court observed that had the insured read the policy he would have found that the policy did not cover every accident and every damage. Nevertheless, the court affirmed the judgment of the trial court, which reformed the contract to conform to the oral representations of the agent. The court held that the statements and conduct of the agent writing the policy were binding upon his principal, and cited *Commercial Casualty Co. v. Connellee*, cited above, as authority for its holding. *Ohio Casualty Ins. Co.*, 134 F.2d at 790.

Gentry was bargaining for a policy insuring against theft, and was entitled to know that certain types of theft were excluded from this "all-risk" policy. Although there was no showing the insurance company's agent intended to deceive Gentry, the insurance company through its agent had a duty to inform its insured of exclusions at the time of the negotiations.[3] The duty to inform was breached. The company received its premium. Gentry suffered a loss he believed to be covered under the policy for which he negotiated, thereby suffering prejudice as a result of being misled by the insurance company's agent. Pursuant to 15 O.S. 1991, § 59, the uncontradicted evidence reveals a constructive fraud. It is no defense to the insurance company that Gentry failed to read his policy when he received it thirty to sixty days after it was issued. Where the evidence establishes constructive fraud that induced the defrauded party to agree to the contract, the instrument may be reformed to conform to the representations of the parties. Accordingly, the trial court did not err in reforming the contract to uphold the agreement for which Gentry bargained.

## II. Insufficiency of Judgment

In his counter-appeal, Gentry contends that the amount of the trial court's award for actual damages was insufficient.

all the agreements or representations between the parties are contained therein."); *Publishers Finance Co. v. Lovelace*, 185 Okla. 322, 93 P.2d 748, 750 (1939) (holding that where a bookseller induces one to sign a contract to purchase books on the representation that the books are on consignment and may be returned, the jury may find that a fraud was committed by the bookseller and allow the party fraudulently induced to rescind the contract, even though the written terms were at variance with the verbal agreement.); *Miller v. Troy Laundry Machinery Co.*, 178 Okla. 313, 62 P.2d 975, 977 (1936) (holding that where one sues to rescind or recover damages on the theory of fraud in inducing him to sign the contract, he may prove his case by presenting evidence that false oral representations were made to him at variance with the provisions of the written agree-

ment, and that those representations induced him to his detriment to sign the contract.); *Dusbabek v. Bowers*, 173 Okla. 53, 43 P.2d 97, 102 (1935) (holding the same as above, cites a Colorado case: "The offender will not be heard to say that there is no remedy because the injured person was too easily duped.")

3. This Court held in *Hubbard v. Bryson*, 474 P.2d 407, 410 (Okla.1970): "If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud. *Morris v. McLendon*, 167 Okl. 68, 27 P.2d 811; *Barry v. Orahood*, 191 Okl. 618, 132 P.2d 645."

He argued to the trial court that he had presented evidence that more had been stolen from him than was reflected by the charges filed against Langley. When addressing the issue of whether the facts of the case support constructive fraud, Gentry argues that this was a fact question that the trial court acting as a fact-finder was to resolve. He then cites *M–A–C Finance Co. of Tulsa v. Parker,* 408 P.2d 552 (Okla.1965), to support his statement that such a decision should not be disturbed upon appeal when there is competent evidence to support it.

But the same reasoning supports allowing the trial court to determine the amount of damages that should be awarded to Gentry. In *Battles v. Janzen,* 325 P.2d 444, 446 (Okla. 1958), this Court held:

> On appeal it matters not that we might or might not have reached a different conclusion as to the amount of damages suffered by reason of the injuries received. Nor that we might or might not feel that the evidence adduced would have sustained a larger verdict. The only question as to the evidence which is here presented is, is there any competent evidence to sustain the verdict.

*Battles* reveals that where a trial court sits in the place of a jury and determines the damages, that determination will be affirmed if there is any competent evidence to sustain the judgment.[4] Testimony of witnesses and the exhibits reveal that a substantial portion of the $98,208.07 in damages claimed by Gentry was for costs of rework or for consequential damages. There was competent evidence in the record to support the award of damages made by the trial court for Gentry's loss caused by Langley's wrongful takings. We find no abuse of discretion by the trial court in making this award.

## III. Set-off

■ The insurance company argued to the trial court that it was entitled to a set-off against the judgment for the amount the convicted contractor, John B. Langley, had paid to Gentry as restitution. The insurance company asserts that the trial court erred in its failure to grant such a set-off. In pronouncing its judgment, the trial court awarded the sum of the amounts of the first four proofs of loss submitted by Gentry to the insurance company. This was identical to the amounts alleged as wrongfully taken from Gentry in the four criminal informations filed against Langley, to which he pled guilty. When the court stated that it intended to award $31,439.43 as actual damages and informed the parties how it had arrived at the amount, the insurance company argued that it should receive a set-off of the amount Langley had paid as restitution to Gentry. The record revealed that Gentry had testified he had received "somewhere in the neighborhood of $3,000 approximately." On cross examination, he agreed that $4,700 could be correct.

The trial judge considered whether or not to deduct the amount of restitution made by Langley. Gentry's attorney argued that the restitution may be attributable to noninsured items that Langley confessed to taking illegally. He also argued that the district attorney may have chosen not to prosecute for every item that may have been stolen by Langley. After the argument by counsel for each side, the trial court determined to make no deduction for restitution.

The insurance company cites *Travelers Ins. Companies v. Dickey,* 799 P.2d 625 (Okla.1990), as support for its argument that it is entitled to subrogate against the party who has actually caused the wrong, and receive money back from the perpetrator. Although that is a correct statement of law, it does not address the issue. The issue is not whether the convicted thief should be liable to repay the insurance company for a claim it

---

4. In *Robert L. Wheeler, Inc. v. Scott,* 818 P.2d 475, 480 (Okla.1991), we held: "In a case involving the breach of a contract, the credibility of witnesses and the effect and weight to be given to testimony are questions of fact to be determined by the trier of the facts, whether court or jury, and are not questions of law for the Supreme Court on appeal. *M–A–C Finance Co. of Tulsa v.* *Parker,* 408 P.2d 552, 556 (Okla.1965). In an action at law, the findings of fact by the trial court have the same force and effect as the verdict of a jury, and those findings will not be disturbed upon appeal where there is any evidence reasonably tending to support the findings. *Bounds v. Gooch,* 92 Okl. 260, 219 P. 105, 106 (1923)."

paid as a result of that theft. The issue is whether the insured must give credit to the insurance company for any amount the thief pays in restitution, even when that thief owes the insured more than the amounts he was convicted of stealing.

The trial court heard the arguments of counsel for the parties. It considered the same evidence heard by the jury in the first trial in which the jury returned a verdict of $73,000.00 in favor of Gentry. The trial court stated that it had determined to award the total of the four informations filed against Langley, that is, $7,782.51, $6,887.12, $10,397.20, and $6,372.60, for a total of $31,439.43. We have above cited the rule that a trial court's decision on the facts of a case will not be disturbed upon appeal when there is competent evidence to support that decision. The trial court conservatively reviewed the record and awarded only the amount the district attorney believed would have supported a criminal conviction under the greater burden of proof of "beyond a reasonable doubt." [5] But when asked to allow for a set-off, the trial court apparently reconsidered, and believing that the record supported more than he had awarded, the court allowed the judgment as stated to stand.

■ Gentry's exhibits reveal that he has other losses caused by Langley covered under the reformed policy that are not reflected in the four criminal informations filed against Langley. The conservative judgment is amply supported by evidence over and above any consideration for the restitution in the amount of $4,700.00. The reasons given by the trial court for the amount awarded are irrelevant when the evidence supports a greater award. The trial court did not err in refusing to allow the set-off. Under the record before the Court, the insurance company is not entitled to a credit for restitution paid by Langley.

## IV. Consequential Damages

■ In support of his claim for consequential damages Gentry quotes 23 O.S.1991, § 21:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.

Gentry may have proven that the damages he sustained were the consequential damages of the theft by Langley, but he failed to prove that he is entitled to consequential damages for the breach of the reformed contract of insurance. He even admits that he lacked about $100,000.00 needed to finish the project. If the insurance company had agreed at the time of the claim to reform its own contract and pay the amount subsequently proven to the satisfaction of the trial court, Gentry still could not have finished the project. As noted earlier, some of the damages shown in the exhibits were for faulty workmanship, not theft. The record certainly supports the determination of the trial judge not to award consequential damages.

## V. Attorney Fees

■ Finally, both the insurance company and Gentry raise the issue of prevailing party attorney fees; the insurance company claiming that the trial court erred in awarding judgment to Gentry, so it should be the prevailing party, and Gentry claiming that the amount of attorney fees awarded to him as prevailing party were insufficient. Both parties concede that under 36 O.S.1991, § 3629, the prevailing party is entitled to attorney fees.[6] Based upon the record be-

---

5. *Spitznas v. State*, 666 P.2d 1307 (Okl.Cr.1983)

6. Title 36 O.S.1991, § 3629(B) provides: "It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and

attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of

fore this Court, we find no abuse of discretion by the trial court.

CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS OPINION VACATED. JUDGMENT OF TRIAL COURT AFFIRMED.

HODGES, C.J., and OPALA, KAUGER and SUMMERS, JJ., concur.

LAVENDER, V.C.J., and SIMMS, HARGRAVE and WATT, JJ., dissent.

fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This

provision shall not apply to uninsured motorist coverage." 1985 Okla.Sess.Laws, ch. 79, § 1.